**STATE of Maine**

**v.**

**Robert L. IFILL.**

Supreme Judicial Court of Maine.

June 8, 1970.

Foahd J. Saliem, Kennebec County Atty., Augusta, for the State.

Wathen & Wathen, by Richard G. Sawyer, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WILLIAMSON, Chief Justice.

The defendant appeals from his conviction by a jury of the offense of attempting to operate a motor vehicle when under the influence of intoxicating liquor. *29 M.R.S.A. § 1312.*

The case turns on whether there were obvious errors in the instructions to the

jury. No objections whatsoever were taken, either on matters of evidence or with reference to the charge at the trial. Our task is to apply Rule 52(b), M.R.Crim.P. which reads:

"(b) *Obvious Error*. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

In State v. O'Clair, Me., 256 A.2d 839, 840, in discussing the rule we said:

"We have repeatedly expressed our reluctance to order a new trial where error is alleged for the first time before this Court on appeal and will do so only where such error is of serious consequence 'affecting substantial rights' and amounting to manifest injustice."

State v. Wright, 128 Me. 404, 148 A. 141.

The defendant represented himself at trial. No claim is made that defendant was indigent or that there was any reason why counsel should have been appointed for him. On appeal[/] the defendant urges through his counsel that special consideration to the claim of "obvious error" should be given in light of the fact that the defendant was not represented by counsel at trial. We do not agree.

We may readily grant that a defendant without counsel may be at a disadvantage in the protection of his legal rights. The risk of this happening in the case before us was accepted by the defendant. He could not thereby place an additional burden on either the trial or the appellate court.

■ "Obvious error" is not measured by the presence or absence of counsel. If the error is "obvious" and thus open to us under the Rule, it will be found as readily when the defendant appears pro se at trial as when the defendant is represented by counsel. Our decision therefore in no way rests on the fact that the defendant chose for reasons of his own to conduct his own defense.

The jury was entitled to find as follows:

At about one o'clock on a May morning, the defendant was at a bar in Waterville. He was under the influence of intoxicating liquor. A police officer who knew the defendant testified:

"A I observed Mr. Ifill walk out of the Silver Dollar, and in doing so, he was staggering. He went out the door and I looked out the window and he got onto the seat of his motorcycle which was parked out front of the Silver Dollar.

"Q Will you indicate where this motorcycle was parked?"

* * * * * *

"Q And what did you see Mr. Ifill do?

"A I saw Mr. Ifill get onto the seat of the motorcycle. At this time I walked outside. Officer Cates and Officer Norman Michaud were also standing beside me. When I walked out they walked out behind me, and I went over to Mr. Ifill who was sitting on the seat of his motorcycle and I advised him not to drive his motorcycle."

* * * * * *

"A I went out to him and I told him, I said: don't drive your motorcycle because you are under the influence of intoxicating liquor.

"Q Did he reply?

"A He sure did, he stated that he was going to drive it, and I again told him, I said: don't drive it because you've had too much to drink, and if you—if you drive it or attempt to drive it, I will have to arrest you. At this time, he got off from his motorcycle—."

Friends of the defendant kept telling him not to drive. With the help of friends, the defendant pushed the motorcycle from in front of the Silver Dollar Bar to the yard of a tire company nearby and "back onto the kick-stand."

We continue with portions of the officer's testimony.

"A * * * Chet Tukey and Grover Bragg [two of defendant's friends] kept trying to talk to Robert Ifill to try to tell him not to drive the motorcycle, and he says: I'm gonna —he said: I'm gonna fire it up and I'm gonna take off, he said, these cops will never catch me, and I again hollered out to him, I says: Bob, I said, don't start the motorcycle and try to drive off. So he says: I'm going to drive it, and he kept—so finally, he kicked the starter and the motorcycle started and he pushed it off the kick-stand. At this time, I placed him under arrest.

"Q Where was he when he did this?

"A He was on the seat of the motorcycle.

"Q And where were his hands?

"A His hands were on the handle grips, and his foot kicked—

"Q How far were you from him?

"A I was approximately ten or twelve feet at this time. As soon as I heard the motorcycle start, I went over to Mr. Ifill, and just as I got over there, he pushed it off the kick-stand, and I grabbed his arm and I placed him under arrest for attempting to operate a motor vehicle while under the influence of intoxicating liquor.

"Q Did you pull him off the motorcycle?

"A Yes I did."

* * * * * *

"A I told him he was under arrest for attempting to operate a motor vehicle while under the influence of intoxicating liquor."

Other officers gave corroborating testimony.

The lights on the motorcycle were not on when the incident occurred. The defendant and other defense witnesses testified in substance that he was not under the influence of intoxicating liquor, that at the time of the arrest he had replaced two wires taken from the spark plugs by friends, and that he was starting the motor to see if it would work. In the defendant's words, "I did start the motorcycle. I started the motorcycle and shut it off, and he told me I was under arrest."

There was also evidence that the defendant turned over the keys before the motorcycle was moved from the Silver Dollar Bar, that without the use of a key the handle bars were locked in one position and the lights could not be turned on. The use of the key was not required to start the engine of the motorcycle. There was "sufficient evidence upon which the jury was justified in returning a verdict of guilty." State v. Mottram, 155 Me. 394, 399, 156 A. 2d 383, 386.

The rule governing the offense of attempting to operate was stated in State v. Sullivan, 146 Me. 381, 384, 82 A.2d 629, 631, as follows:

"Where an attempt to operate is charged, there must be an *intent* to commit the offense of operating. Unless the acts done were done with the intent to operate the motor vehicle while under the influence of liquor, no offense is committed. State v. Jones, 125 Me. 42, 130 A. 737, where the alleged act was to 'insert and turn the key of said automobile and put his foot upon the self-starter.' 'To constitute an attempt there must be something more than mere intention or preparation. There must be some act moving directly towards the commission of the offense after the preparations are made.' "

As was said in State v. Doran, 99 Me. 329, 332, 59 A. 440, "To constitute an attempt there must be something more than mere intention or preparation. There must be some act moving directly towards the

commission of the offense after the preparations are made." See also Duncan, Petr. v. State, 158 Me. 265, 183 A.2d 209; State v. Miller, Me., 252 A.2d 321, 324; 21 Am. Jur.2d Criminal Law § 110; 22 C.J.S. Criminal Law § 73.

We turn to the three charges of reversible error in the instructions to the jury.

"(1) In a trial for an attempted crime is it reversible error to omit any discussion of the defense of impossibility in the Judge's charge to the jury where such a defense is logically suggested by the evidence?"

 From our review of the record we find no evidence of impossibility of operation of the motorcycle. There was, however, evidence pointing to the difficulty of operation, and of limitations in the normal operation arising from locked handlebars and no lights. This evidence bore upon the intention of the defendant, but did not determine that the motorcycle was in fact inoperable, or deny an intention to operate.

The instructions [1] were, in our view, sufficient to enable the jury as reasonable men and women to pass on the evidence and to find beyond a reasonable doubt the existence of the elements of the offense.

"(2) Was it reversible error for the presiding justice, in his charge, to preclude implicitly from the jury's speculation that Defendant's acts, if proven, were no more than preparation?"

The answer is found in the instructions 1. The Court, in our view, did not direct the jury to any conclusions on the evidence. The jury was properly instructed in substance that if, and only if, the elements of the offense were proven, the offense was committed.

"(3) Is it reversible error for the presiding Justice to discuss the tendancy of witness's testimony to be colored by their interest and in the same sentence imply that police officers have no special motivation and

---

1. The charge reads in part:

"Now this is not a charge of operation, this is an attempt to operate; an attempt to operate is what this defendant is being charged with. Now to constitute an attempt to commit a crime, there must be something more than mere intention or preparation. There must be some act moving toward the commission of the offense after preparations are made. That is what our Law Court has said, our Supreme Court. There must be some act moving toward the commission of the offense after preparations are made. Now the State says they have proved to you beyond a reasonable doubt that this defendant did attempt and that he did perform an act after the preparation, and they say that he had the intent to operate that motorcycle. The State says that they have proved that beyond a reasonable doubt. They also say that he was under the influence and they presented several officers who gave their opinion, and the State says that he fired up, and I will use the same words they used here as motorcycle men, that he did fire up or start his motorcycle and that he did the act of whatever you remember, either kicking away a stand or whatever you remember the evidence to be, and that was the attempt. Now if you find that is so, if you find this man was under the influence of intoxicating liquor and that he did start his motorcycle and did kick it away and had the intent to operate, why then he is guilty of attempt. Now the defendant says no, he says I was not under the influence. He says I had two beers, and he said that in his opinion he was not under the influence, and he presented witnesses who said in their opinion that he wasn't under the influence, and he said furthermore, I didn't intend to drive that motorbike out there, and I just wheeled it up in there off the road, although he did say that he felt that he could start it, if I remember, but as long as he didn't start it in front of the Silver Dollar Bar, but he said even so, that he was trying it out after someone had taken out some plugs or taken off some wires and if I misquote the testimony, you accept it as you remember it and not as I say it. But that's what the defendant said, he said I just turned it on to see if it would start and then turned it off again. Now where does the truth lie?"

their testimony is therefore more likely to be impartial and accurate?"

■ The Court said, in discussing circumstantial and direct evidence, "every witness more or less has some interest in the case often times, especially the defendant in this case of course he has got an interest, the police officers have an interest, but feel and weigh their interest, I mean what purpose would they have to testify and color their testimony. We don't say that people come out here and lie. It happens sometimes, and of course that's a crime, the crime of perjury if you lie, but people come in and because of their interest maybe sometimes they have a tendency to color their testimony."

The law does not prohibit the Court from reminding jurors of common sense principles applicable in everyday life.

The defendant also objects to the following: "As I have told you before, it is your duty to find the facts, and it is up to me to instruct you on the law and also to do the sentencing." He contends that the instruction "was overtly suggestive to the jury that the Judge was suggesting to them that the result should be a finding of guilty and is sufficient alone for this Court to order a new trial."

■ The words quoted follow a statement of the statutory offense ending "shall be punished by a degree of punishment which is not up to you, it is up to me." Surely, men and women comprising a jury would not so easily be misled or prejudiced by the words of the Court as the defendant would have us believe. The duty of the jury to find the facts and to render a verdict of guilt or innocence under the rules of law, were clearly made known in the instructions of the Court.

The instructions given were applicable to the evidence at trial. There was no error; let alone no obvious error.

The entry will be:

Appeal denied.