283 A.2d 265.

Natalie M. Anderson *vs.* Robert Anderson *et al.*

NOVEMBER 5, 1971.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.   Natalie and Robert Anderson are husband and wife.   This appeal is but another chapter in the protracted and almost continuous litigation[1] involving this couple which has continued to occupy the attention of the courts of this state ever since the wife commenced divorce

[1]*See Anderson v. Anderson,* 107 R. I. 202, 266 A.2d 56 (1970), the wife's suit to set aside the mortgage foreclosure on the Anderson marital domicile; *Anderson v. Anderson,* 108 R. I. 758, 279 A.2d 422 (1971), the husband's appeal from a decree of the Family Court granting the wife's divorce petition; *Anderson v. Anderson,* 109 R. I. 901, 279 A.2d 749 (1971), the wife's petition for certiorari seeking a review of an ex parte order entered in the Family Court enjoining its clerk from withholding certain funds on deposit in the Court's Registry. The order was ancillary to a petition filed by the husband's attorney wherein the attorney sought to impress a $10,000 lien on the money in the Registry.

proceedings against the husband in 1968. The instant proceeding involves the husband's appeal from a judgment entered in the Superior Court adjudging the wife to be the owner of fifty per cent of the assets of Windsor Builders, Inc. (hereafter called Windsor Builders) and ordering the husband in his capacity as president and treasurer of the corporation to execute and issue such stock certificates as would give his wife fifty per cent interest in the corporation.

In August 1963, during a time of comparative marital tranquility, the Andersons mortgaged their East Greenwich home so that they could purchase a parcel of land in Warwick. They took title to the two-lot parcel in their joint names. The husband built a house on one of the lots. Sometime in February 1964, documents were filed in the Secretary of State's Office incorporating Windsor Builders, Inc. The incorporators were the Andersons and their accountant. The Warwick property was deeded to the new corporation. The newly-built home was sold. The corporation then built another home on the second lot and it, too, was sold.

Later, the Andersons entered into an agreement to purchase 60 acres of land located in East Greenwich. Title to the land, however, was taken in the name of Windsor Builders. The Andersons refinanced the mortgage on their residence and transferred the mortgage money to the corporation. The husband assured his wife that her interest in the property and money given to Windsor Builders would be protected since she would be made a stockholder of the new corporation. Financial difficulties began to beset the corporation. It was petitioned into receivership. It is conceded that no stock certificates were ever issued. When the wife commenced this suit, process was served upon her husband by having a copy of the summons and complaint served at his last and usual place of abode. The

corporation was not served. On February 15, 1969, the husband was defaulted because of his failure to plead to or otherwise defend the pending suit. Sometime thereafter, he filed a motion to vacate the default. A Superior Court justice denied this motion and then heard the wife's testimony in support of her claim. The judgment previously referred to was entered and this appeal ensued.

Before us, the husband has abandoned any challenge of the Superior Court's refusal to remove the default or its findings as to the wife's entitlement to fifty per cent of the corporate stock. Rather, he now raises for the first time the question of whether we should dismiss his wife's suit because of her failure to join an indispensable party, to wit, Windsor Builders. Although we usually will not consider an issue not raised in the trial court, we have on our own motion considered a plaintiff's failure to join an indispensable party. *Demers* v. *Adamson,* 102 R. I. 453, 231 A.2d 484 (1967). We have also ruled that, if the circumstances so warranted, the omission of a party might be raised at the appellate level even though no such objection was made at the trial level. *Koshgarian* v. *Hawksley,* 90 R. I. 293, 157 A.2d 663 (1960). Since we have not been called upon to construe Super. R. Civ. P. 19, we believe that the case at bar presents an appropriate occasion to discuss in some detail an issue which is of substantial import to the bench and bar.

Rule 19 concerns the compulsory and noncompulsory joinder of parties. In its pertinent portions, it reads as follows:

"Rule 19. Necessary joinder of parties

"(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest which is not also a several interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who

should join as a plaintiff refuses to do so, he may be made a defendant.

"(b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them can be acquired only by their consent or voluntary appearance; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

Rule 19 is patterned after Rule 19 of the Federal Rules of Civil Procedure as the Federal Rule read prior to its amendment in 1966. Our rule, like its federal counterpart, recognizes the difference between parties whose presence is absolutely essential, if the action is to proceed at all, and those who ought to be joined but without whom the action can continue. The first class has long been referred to, in the federal practice, as "indispensable" and the latter group as "necessary." 1 Kent, *R. I. Civ. Prac.* §19.2.

When Federal Rule 19 was first promulgated in 1937, it was said to be nothing more than a reaffirmation of the past equity practice as it related to the necessary joinder of parties. *Wesson* v. *Crain*, 165 F.2d 6 (8th Cir. 1948). It is fitting, therefore, that we review briefly the development of the doctrine of joinder as it has evolved in the courts of equity. Up until the eighteenth century, equity required the joinder of all interested parties but recognizing that practical difficulties and obstacles often made this impossible or impractical, it relaxed its requirement of complete adjudication of a controversy. The chancellor felt that doing an incomplete job in the pending litigation would often be better than doing no job at all. Equity's attitude began to change in the late 1700's because of the then current sen-

timent of "doing perfect justice" and "making complete decrees." The concept of the "complete decree" represented a change from the earlier flexible and more practical approach to the joinder problem. Hazard, *Indispensable Party: The Historical Origin Of A Procedural Phantom,* 61 Colum. L. Rev. 1254 (1961); Kaplan, *Continuing Work Of The Civil Committee: 1966 Amendments Of The Federal Rules Of Civil Procedure* (I), 81 Harv. L. Rev. 356 (1967). In Professor Hazard's view, equity's reluctance to render a decree which did not completely dispose of a controversy gave rise to the indispensable party concept.

The classic distinction between indispensable and necessary parties was drawn in the mid-nineteenth century in the oft-cited case of *Shields* v. *Barrow,* 17 How. 130, 15 L.Ed. 158 (1854). Indispensable parties were defined as:

> "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 139, 15 L.Ed. at 160.

While necessary parties were described as:

> "Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. * * * but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." *Id.* at 139, 15 L.Ed. at 160.

Another legal scholar has formulated the *Shields* v. *Barrow* definitions as follows:

> "* * * if the court can proceed to a meaningful decree without affecting the interest of the absent person,

that absent person is at most a 'necessary' party; if the circumstances are such that the court cannot so proceed, then the absent one is an 'indispensable' party." Reed, *Compulsory Joinder of Parties in Civil Actions,* 55 Mich. L. Rev. 327 at 343.

While this formulation demonstrates the flexibility shown earlier in equity, this particular quality was soon eradicated as courts seized upon words as "separable" and "without affecting that interest" with the result a test was fashioned whereby the concept of "severability" became the dominant factor in determining the indispensability of the absentee. In every instance the severability test remained all important, notwithstanding the adoption of the original Rule 19. This was due to the presence in the Rule of the terms "indispensable" and "joint interest." As pointed out by the Advisory Committee on Rules, the use of these terms "* * * directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, and correspondingly distracted attention from the pragmatic considerations which should be controlling." *See* Amendments to Rules of Civil Procedure, *Advisory Committee's Note,* 39 F.R.D. 69 at 90 (1966).

Illustrative of judicial fixation for determining an absentee's status by the severability or nonseverability of his interest can be seen by a glance at *Newland* v. *Edgar,* 362 F.2d 911 (9th Cir. 1966). There the court employed what it described as a "workable test" whereby the "indispensable" could be distinguished from the "necessary" party. It lists the following four criteria:

(1) Is the interest of the absent party distinct and severable?

(2) In the absence of such party, can the court render justice between the parties before it?

(3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party?

(4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

If any one of the four inquiries is answered in the negative, the absentee is indispensable. If all four gain affirmative replies, the party is "necessary." It is obvious, however, that a negative answer to the first inquiry brings the litigation to a halt. This test, first formulated in *State of Washington* v. *United States,* 87 F.2d 421 (9th Cir. 1936), and used repeatedly thereafter by courts, makes "joint interest" synonymous with "indispensable party" and a "severable interest" equivalent to "necessary party." It discourages any thorough analysis of a case and encourages the reaching of a result in a mechanical and unimaginative fashion because the test can lead to a finding based solely on the status of the absent person's interest.

Much of the criticism directed at the doctrine of indispensability resulted from the tendency of many courts, after finding that the absentee was indispensable, to refuse to make any adjudication whatever because of an alleged "lack of jurisdiction." Professor Hazard observed that "There is *no* party whose absence *prevents* a decree. There *are* parties whose absence prevents a *complete* decree * * *" and therein, he says, "lies the fallacy of the indispensability rule." *Hazard, supra* at 1282. In other words, it should be emphasized that a finding of indispensability does not deprive the court of its power to act with respect to those before it, rather the question takes on constitutional overtones because no court having regard for the guarantee of due process will adjudicate upon a person's rights without that person being actively or constructively before the court. *Britton* v. *Green,* 325 F.2d 377 (10th Cir. 1963); *Doerr* v. *Warner,* 247 Minn. 98, 76 N.W.2d 505 (1956).

The 1966 amendment of the Federal Rule constitutes an effort to minimize the distinction made between "nec-

essary" and "indispensable" parties which had often elevated the historical past to a position above logic and reality. Under the new Rule, the inflexible approach to a determination of indispensability is replaced by a practical consideration of the feasibility of the proceeding without the absentee. The formal ritualistic application of the *Shields* v. *Barrow* formula is to give way to the pragmatistic sentiments earlier expressed by the equity courts.

The 1966 revision of Rule 19[2] eschews the use of the labels "indispensable"[3] and "necessary." Rule 19(a) categorizes those persons whose joinder is required either from the standpoint of achieving complete adjudication or protecting the absentee's interests or because of the necessity of safeguarding persons already before the court from the risk of being exposed to inconsistent decisions. Nowhere in this subsection is there found any reference to such terms as "joint" or "severable."

If the absent person cannot be made a party, even though he might be classified as indispensable, the rule does not require a dismissal. Instead, the new rule requires the court to proceed and examine four interests and then determine whether in "equity and good conscience" it should proceed without the person who is beyond the reach of the court's process. The criteria listed in the new Rule 19(b) represents a balancing of interests—the plaintiff's interest in having a forum; the defendant's interest in being protected from needless multiple litigation or from incurring inconsistent obligations; the absentee's interest that any

---

[2]*See* Appendix.

[3]The Advisory Committee's Note discloses that the word "indispensable" found in subsection (b) of the amended Rule is used strictly in a conclusory sense, that is, a person is to be regarded as indispensable only if he cannot be made a party and after a consideration of the factors contained in subsection (b), it is determined that it would be preferable to dismiss the action rather than to proceed. 39 F.R.D. 69 at 93(1966).

judgment entered will not, as a practical matter, impair or impede his ability to protect his interest in the subject matter of the litigation; and lastly, due regard is given to the interest of the courts and public in the effective and expeditious dispatch of litigation. *Schutten* v. *Shell Oil Co.,* 421 F.2d 869 (5th Cir. 1970).

The Supreme Court in *Provident Tradesmens Bank & Trust Co.* v. *Patterson,* 390 U. S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) observed that the generalizations found in *Shields* v. *Barrow,* as to whether to proceed or dismiss in the absence of an interested but nonjoinable outsider, are still valid and consistent with the requirements of the new Rule but "are not a substitute for the analysis required by that Rule."[4] It was emphasized in *Provident, supra,* that a finding of indispensability is to be based on pragmatic considerations and that there is no fixed formula for determining in every case whether or not a person is an indispensable party since the question "can only be determined in the context of particular litigation."[5]

Since our Rule 19 resembles the pre-1966 amendment for Fed. R. Civ. P. 19, we shall dwell on the principles that governed the equity practice in this jurisdiction prior to the effectuation of the Superior Court's Rules of Civil Procedure on January 10, 1966. This court has in the past apparently followed the rationale of *Shields* when it declared that a person is to be regarded as "necessary" when it is determined that no decree can be made respecting the subject matter of the litigation until the missing party is before the court. *Burrill* v. *Garst,* 19 R. I. 38, 31 A. 436

---

[4] 390 U. S. at 124, 88 S.Ct. at 746, 19 L.Ed.2d at 953.

[5] 390 U. S. at 118, 88 S.Ct. at 742, 19 L.Ed.2d at 950.

(1895). Although the court used the word "necessary,"[6] it was describing a party who, in the parlance of the Federal Rules, would be identified as "indispensable." The court in *Burrill* went on to remark that the application of the rule rests in the discretion of the court and the discretion should be used to render justice and prevent a multiplicity of suits.

Later, in *Sprague v. Stevens*, 37 R. I. 1, 91 A. 43 (1914), the court quoted at length from Justice Story's treatise on Equity Pleadings wherein the distinguished jurist observed that while equity recognized the rule that all persons "legally or beneficially interested in the subject-matter of a suit should be made parties," it would not be applied if the case could. be disposed without prejudice to the rights of the absentees or "if the circumstances of the case render the application of the rule wholly impracticable." Story, however, then continued on to remark, "On the other hand, if complete justice between the parties before the court cannot be done without others being made parties, whose rights or interests will be prejudiced by a decree, then the court will altogether stay its proceedings, even though those other parties cannot be. brought before the court * * *." 37 R. I. at 19, 91 A. at 49. Hazard, in describing Story's view as being inconsistent, points out that if, as the jurist concedes, a party not joined is not bound, how can the unjoined party be "prejudiced by a decree." Haz-

---

[6] The imprecise use of the term "necessary" can be seen in *Koshgarian* v. *Hawksley*, *supra*; *Goucher* v. *Herr*, 65 R. I. 246, 14 A.2d 651 (1940). In those cases, the court used the term "necessary" when actually it described one who under the Federal Rules would be considered "indispensable."

ard, *supra* at 1287.[7] It is interesting to note that in neither the *Burrill* nor the *Sprague* case did this court find that the absentee's presence was required.

While we cannot comply with the letter of the new Rule 19, we can adhere to its spirit by adopting the definition of an "indispensable party" enunciated by the now Chief Judge Aldrich in *Stevens* v. *Loomis,* 334 F.2d 775 (1st Cir. 1964):

> "* * * true indispensable parties are only those whose interests could not be excluded from the terms or consequences of the judgment and leave anything, or appreciably anything, for the judgment effectively to operate upon, as where the interests of the absent party are inextricably tied in to the cause * * * or where the relief really is sought against the absent party alone * * *. In other words, if there may be a viable judgment having separable affirmative consequences with respect to parties before the court, and the inquiry is concerned solely with the inequities, in the light of the total circumstances, resulting from the inability to affect absent interested parties, then such other parties should be defined as merely necessary, not indispensable." *Id.* at 777.

We believe that the view expressed by Chief Judge Aldrich represents the pragmatic approach to the "old" Rule 19 which the Court in *Provident, supra,* recommends in applying the "new" Rule 19. A trial judge in applying our Rule 19 should seek to avoid a dismissal whenever possible. He should have as his guide the following observation made by Justice Harlan:

> "To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed'

[7]Mr. Justice Harlan in *Provident, supra,* acknowledges the views expressed by Hazard but points out that although the absentee is not technically bound by any judgment in the pending action, the court must consider if and how, as a practical matter, the absentee's interests will be affected should the litigation proceed. 390 U. S. at 110, 88 S.Ct. at 738, 19 L.Ed.2d at 945.

without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Provident Tradesmens Bank & Trust Co.* v. *Patterson*, 390 U. S. at 119, 88 S.Ct. at 743, 19 L.Ed.2d at 950.

Turning now to the facts of the case at bar, it is clear that the wife's suit is based on her husband's promise to transfer to her a sufficient number of the authorized shares of stock of Windsor Builders as would correspond to her investment in the corporation. Casting aside the corporate veil, we see that the Andersons are, for all practical purposes, the corporation. He acted as its president and treasurer. She was its secretary. The trial justice was aware of what was transpiring between the parties. He ordered the husband to execute such stock certificates as would show the litigants each owning fifty per cent of the authorized stock.

It matters little to Windsor Builders, or to its receivers, as to who owns the corporation's stock and in what amount. The sole object of the wife's endeavors in this suit is to establish her interest as a stockholder in what is now a defunct corporation and hopefully receive a dividend from the receivers once the receivership is terminated.

Even though we have endorsed the use of the definition used in the *Stevens* case, it is obvious that no matter which indispensability formula or definition is applied to the facts of the case at bar, there is no need for making Windsor Builders a party to this suit and the husband's motion to dismiss is denied.

The defendant's appeal is denied and dismissed. The judgment appealed from is affirmed.

### APPENDIX.

"Rule 19.* Joinder of Persons Needed For Just Adjudication.

---

*This rule became effective on July 1, 1966.

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for plaintiff.

*Alfred Factor,* for defendant.