360 A.2d 567.

JULIUS MANEKOFSKY *et al. vs.* GUIDE REALTY, INC. *et al.*

JULY 19, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is an appeal from a Superior Court order and judgment entered pursuant to Rule 54(b) granting the motion of Sidney L. Rabinowitz, administrator c.t.a. of the estate of Camillo Rosenbach (sometimes referred

to as administrator), that he be dropped as an involuntary plaintiff named as a party defendant in a suit seeking to recover on a promissory note secured by a mortgage on real estate. After a hearing on May 30, 1974, an order was entered by a Superior Court justice removing defendant Rabinowitz from the suit and striking his pleadings from the record. The plaintiff, Olevson, filed a notice of appeal to this court on June 11, 1974. Final judgment was entered in Superior Court on July 1, 1974.

The question before us represents only a small part of a complicated suit in which claims, counterclaims and cross-claims were made by all parties. The suit is based on a series of real estate transactions entered into by plaintiffs and defendants other than Rabinowitz.

The transactions involved were as follows:

1. A second mortgage loan by Olevson in his capacity as conservator of the estate of Camillo Rosenbach to Manekofsky, with three lots of land owned by Manekofsky and his wife as security for the loan,

2. The creation of Guide Realty, Inc., by Manekofsky and Weiss with themselves as sole stockholders,

3. Transfer of title of the three mortgaged lots to Guide Realty, Inc. by Manekofsky,

4. Sale of Manekofsky's stock in Guide Realty, Inc., to Weiss,

5. Default by Weiss on second mortgage payments,

6. Foreclosure by Rabinowitz as administrator of estate of Camillo Rosenbach,

7. Purchase by Weiss of the three mortgaged lots of land at foreclosure sale,

8. Suit by Manekofsky and Olevson against Weiss and the three defendant corporations seeking to recover the deficiency due under the second mortgage.

Rabinowitz was not originally a party to the suit but was brought in by Olevson and Manekofsky as an involun-

tary plaintiff and named as a defendant in plaintiffs' amended complaint of October 13, 1971, in which they demand judgment for the amount of the mortgage note in favor of Rabinowitz as administrator c.t.a. of the estate of Camillo Rosenbach. Weiss filed a counterclaim alleging that Manekofsky had fraudulently represented to him that the three lots of land were unemcumbered except for the first mortgages, and Rabinowitz moved in Probate Court to have Olevson's account as conservator of the estate of Camillo Rosenbach disallowed in regard to the three mortgaged lots alleging a violation of G. L. 1956 (1969 Reenactment) §33-15-35. Rabinowitz in Superior Court moved to have himself removed from the case as an improper party and it is the order and judgment granting that motion that is the basis of the appeal before this court.

The plaintiffs argue that deceased Rosenbach was the third-party beneficiary of a contract between Manekofsky and Weiss in which the latter promised to pay Manekofsky's debt to Olevson, conservator of the estate of Rosenbach, and that upon Rosenbach's death his administrator Rabinowitz became the third-party beneficiary.

The plaintiffs contend that Super. R. Civ. P. 19 is not altogether clear and admit that it is arguable that the administrator c.t.a. cannot be joined under Rule 19(a) which was done, but can be summoned in under Rule 19(b) which was not done. They urge, however, that the administrator c.t.a. belongs in the case in some capacity, and once having been brought in under Rule 19, he should be kept in the case. They argue as a matter of policy that it is preferable to resolve the rights and interests of all parties in a single case rather than in a series of cases. They assert that although not an indispensable party that the administrator is at least a necessary party. *Savoia Films S.A.I.* v. *Vanguard Films, Inc.,* 10 F.R.D. 64,

66 (S.D. N.Y. 1950), and as such should not have been dropped as an improper party.

The administrator maintains that the mortgage loan was unlawful under §33-15-35, that his recourse is against the conservator, plaintiff Olevson, or his bonding company and that he has moved to disallow the conservator's account in the Probate Court. He argues that he is neither an indispensable party nor a necessary one, and that he is neither obligated to participate nor desirous of participating in the present case.

When Rabinowitz moved to be dropped from the suit as an improper party it became the duty of the trial justice to determine whether he was either an indispensable or necessary party under Super. R. Civ. P. 19 thereby requiring his continued presence as a party in the suit.

Rule 19 recognizes the difference between parties whose presence is absolutely essential, if the action is to proceed at all, and those who ought to be joined but without whom the action can continue. The first class has long been referred to, in the federal practice, as "indispensable" and the latter group as "necessary". *Anderson* v. *Anderson*, 109 R. I. 204, 208, 283 A.2d 265, 267 (1971); 1 Kent, *R. I. Civ. Prac.* §19.2 at 176-78 (1969).

It is clear that the outcome of the suit between the plaintiff, Manekofsky, and his former partner, the defendant Weiss, would be unaffected by the presence or absence of Rabinowitz as a party to the suit. It is equally clear that the administrator's remedy against the conservator would be unaffected by the outcome of the instant suit. Thus it is apparent that administrator Rabinowitz cannot be considered either an indispensable or a necessary party who should be joined under Super. R. Civ. P. 19. The trial justice did not abuse his discretion in determining that there was no need to retain the ad-

ministrator Rabinowitz as a party and acting under the authority of Super. R. Civ. P. 21 properly dropped him from the suit.

The plaintiffs' appeal is denied and dismissed and the judgment appealed from is affirmed.

*Samuel A. Olevson*, for plaintiffs.

*Melvin A. Chernick*, for defendants.

360 A.2d 561.
BERNARD McCAUGHEY *vs.* GEIGY CHEMICAL CORPORATION

JULY 20, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J. This is an employee's original petition for benefits under the Workmen's Compensation Act seeking compensation for total incapacity, for hospital and medical bills and for specific compensation for loss of hearing.

The facts are undisputed. The petitioner was employed by respondent corporation as a mechanic's helper in the maintenance department. On May 18, 1965, while working on a press plate, a ratchet handle let go and struck petitioner on the head. The petitioner obtained treatment by the plant nurse and returned to work. That night petitioner became nauseous and felt dizzy. He then came under the care of Dr. Sacco who treated him until 1966. During this time petitioner had a buzzing and humming in his right ear with a loss of hearing. Prior to the accident petitioner had no difficulty with his hearing. The petitioner was out of work from May 26, 1965 through June 7, 1965. The petitioner entered into a nonprejudicial agreement with respondent. In 1968, petitioner was treated by Dr. Rossignoli, Dr. Littleton, Dr. Robinson and Dr. McNelis. The petitioner continued to have a buzzing and humming sensation in his right ear, suffered dizzy spells, and a loss of hearing.

Doctor Mendell Robinson, an otologist specializing in diseases of the ear testified that it was his opinion that the accident of May 18, 1965, caused petitioner's injury. Doctor Robinson first examined petitioner April 17, 1970. At that time he tested petitioner and recorded a 40-45%

hearing loss in petitioner's right ear. The petitioner was examined again by Dr. Robinson on December 7, 1972, when he was again tested and a 35% loss of hearing in petitioner's right ear was recorded.

The trial commissioner found that petitioner was totally incapacitated from May 26, 1965 to June 7, 1965. He further found that from the testimony of petitioner, from the history given to Dr. Robinson by petitioner, and the testimony of Dr. Robinson, that petitioner had a loss of hearing at that time. The trial commissioner entered a decree on June 5, 1973, which in pertinent part required respondent to pay petitioner total compensation for disability from May 26, 1965 through June 7, 1965, and to pay medical and hospital bills incurred due to the injury. Specific compensation for loss of hearing in petitioner's right ear was denied on the finding that petitioner was aware of his hearing loss at least two years before the filing of his petition on April 26, 1972.

Both parties appealed from the decree entered by the trial commissioner to the full commission. The respondent claimed that the award of compensation from May 26 through June 7, 1965, was not based on medical evidence and was, therefore, unsubstantiated and that the award by the trial commissioner constituted error. The petitioner claimed that the statute of limitations under the circumstances should not bar the claim for loss of use of hearing in petitioner's right ear.

The full commission reversed the trial commissioner's decision awarding compensation for incapacity on the ground that it was not based on medical evidence. The full commission, however, sustained the decision of the trial commissioner that the statute of limitations is a bar to petitioner's claim for specific compensation for loss of hearing in his right ear. The petitioner has appealed to this court from the decree of the full commission.

The petitioner contends that the full commission erred when it found that the statute of limitations [G. L. 1956 (1968 Reenactment) §28-35-57] barred the filing of the claim for specific compensation.

The petitioner argues that the testimony of Dr. Robinson to the effect that the hearing loss was down to 35% in December 1972, constituted a betterment over the 40-45% loss recorded in 1970, and that consequently there was no end result reached until 1972. The petitioner contends that his hearing loss was fluctuating and did not become permanent at its most improved level until 1972, and that although he knew he had a buzzing sound in his ear he could not have known as a layman that the end result had been reached.

The respondent argues that there is competent evidence including the testimony of petitioner himself that the loss of hearing occurred at the time of the accident to support the finding that petitioner knew of his hearing loss more than two years before he filed his petition.

The statute of limitations under the Workmen's Compensation Act begins to run upon the end result of a permanent physical disability. The end result is reached when sound medical opinion could conclude that any improvement from medical treatment had reached its potential. *Fontaine* v. *Gorfine*, 105 R. I. 174, 179, 250 A.2d 361, 363 (1969); *Tirocchi* v. *United States Rubber Co.*, 101 R. I. 429, 434, 224 A.2d 387, 391 (1966).

Before the statute of limitations begins to run, petitioner must have known or by the exercise of reasonable diligence should have known of his disability. General Laws 1956 (1968 Reenactment) §28-35-57. An injured worker is considered aware if, as a reasonable man, he would have believed that he was afflicted due to a work related injury. *Rastella* v. *State Dept. of Pub. Works*, 102 R. I. 123, 126, 229 A.2d 43, 45 (1967). The statute of limita-

tions does not begin to run on a latent injury simply because petitioner is aware that he is in pain but in addition the employee must have knowledge either actual or constructive of his disability. *Provencher* v. *Glas-Kraft, Inc.*, 107 R. I. 97, 103-04, 264 A.2d 916, 919 (1970).

The petitioner argues that sound medical practice was capable of improving his condition so that in December 1972, his hearing loss was 35% which was an improvement or betterment over the 40-45% hearing loss recorded in 1970. He reasons therefore that since no end result was reached until December 1972, the statute of limitations did not commence to run until that date.

This reasoning of petitioner would be persuasive except that the medical opinion of Dr. Robinson was that petitioner suffered a labyrinthine concussion, nerve-type ear injury at the time of the accident which caused a permanent hearing loss. Doctor Robinson testified that such an injury is irreversible which means that the end result was reached at the time of the accident. Doctor Robinson further stated that there may be a five percent variation in the test results and when dealing with inner ear problems, there is a fluctuation in ability to hear.

The evidence which included the testimony of petitioner, the history given to Dr. Robinson by petitioner, and the testimony of Dr. Robinson, clearly supports the conclusion by the full commission that the end result had been reached more than two years prior to the filing of the petition on April 26, 1972.

The petitioner next argues that the full commission erred when it refused to award compensation for disability for the period May 26 through June 7, 1965, on the ground that there was no medical evidence to establish the employee's incapacity.

The issue for determination by us is whether medical testimony was needed in order to prove incapacity. The

petitioner argues that the facts in the case are such that no medical testimony is necessary. The respondent citing *Denisewich* v. *Abbott Glass Co.,* 98 R. I. 182, 188, 200 A.2d 455, 458 (1964), argues that the rule in Rhode Island is that medical testimony is needed in order to support a finding of incapacity.

In *Denisewich,* however, the facts were such that medical testimony was required and there was no holding that a layman's testimony in all cases would be insufficient.

The established rule in this state was set forth in *Valente* v. *Bourne Mills,* 77 R. I. 274, 75 A.2d 191 (1950), wherein this court stated that medical testimony as to nature and cause of injury is not always required to establish right to compensation. *See also* 3 Larson *Workmen's Compensation Law* §79.51 at 181.

The petitioner's appeal from that portion of the decree denying specific compensation for loss of hearing is denied and dismissed. The petitioner's appeal from that portion of the decree denying compensation for incapacity for the period May 31, 1965 through June 7, 1965, is sustained. The cause is remanded to the Workmen's Compensation Commission for the commission to decide whether the testimony of Dr. Robinson, together with the testimony of the petitioner himself, is sufficient evidence upon which to base an award for compensation for incapacity.

Motion to reargue denied.

*Vincent F. Kane,* for petitioner.

*Francis V. Reynolds, Bernard W. Boyer,* of Counsel for respondent.