385 A.2d 1062.

ALVIN R. DORECK *v.* JEANNETTE RODERIQUES.

MAY 15, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. This is a civil action in which the plaintiff, individually and as the administrator of his wife's estate, seeks to recover from the defendant, his sister-in-law, a sum of close to $24,000. The jury returned a verdict for the plaintiff, and the defendant is before us on a single-issue appeal. She claims that the trial justice erred when he denied her motion to dismiss the plaintiff's complaint because of a fail-

ure to join an indispensable party. To put the issue in its proper perspective, we shall briefly review the evidence. During our narrative we shall, for the most part, refer to the plaintiff, his wife, the defendant, and the alleged indispensable party by their first names.

In 1973 plaintiff, Alvin R. Doreck, retired after working for 22 years as a civilian employee at the Quonset Point Naval Air Station. Alvin and Pauline, his wife of some 23 years, decided they would spend their retirement years in the temperate clime of Florida. Accordingly, they sold their Coventry home, and in June 1974 they moved to Florida, where they purchased another home. They opened a joint account at a Florida bank with an initial deposit of approximately $24,000. All was going well with the Dorecks until mid-1975, when Pauline suddenly became ill. Her ailment was initially diagnosed as a malignant brain tumor. Surgery was suggested but Pauline insisted that the surgery take place in Rhode Island, as she wished to be near her family during this particular period.

The Dorecks returned to Rhode Island on June 1, 1975, and 4 days later the surgery was performed. While the surgery was a success, the doctors discovered that the primary site of the malignancy was Pauline's chest. Consequently, she began to undergo a course of radiation therapy.

While Pauline was convalescing in the hospital, Alvin returned to Florida and wound up the family affairs so that he and his wife could once again become Rhode Island residents. The money in their joint account was transferred to the Coventry branch of the Old Stone Bank, where the account stood in both their names. In time the Dorecks rented an apartment, and the Old Stone bankbook was placed in a bureau drawer to which both spouses had access.

Pauline's illness apparently had the effect of bringing her close to her sister, Jeannette, and a niece named Doris. Although neither Jeannette nor Doris had seen Pauline with any degree of regularity prior to Alvin's retirement, after the

surgery had been performed they became her constant companions. Pauline would go to Jeannette's house in Seekonk, Massachusetts, and remain there for 4 or 5 days at a time. On July 8, 1975, Pauline asked Jeannette and Doris to take her to the Old Stone's Coventry office. Once they arrived there, Pauline closed out the joint account she had with Alvin and withdrew the balance of about $24,000. She then opened a new account in her own and Jeannette's names and redeposited the $24,000. This bankbook was placed in a safe-deposit box which Pauline had rented on July 9 in her own and Doris' names. Pauline gave the keys to the box to Doris.

Alvin first heard of his spouse's banking activities when in August he attempted to deposit his pension check in what he thought was his and Pauline's savings account. A teller informed him that the account had been closed about a month earlier. When Alvin questioned Pauline about this situation, she assured Alvin that he had no cause to worry, and Alvin testified that he never brought up the subject again.

During the summer of 1975, Pauline was in and out of the hospital as she underwent the radiation therapy. During this period, she was also treated by a psychiatrist. The radiation treatments were to no avail, and Pauline died on October 8.

On the day before her sister's death, Jeannette, in the company of Doris, went to Old Stone's Coventry branch and closed out the account. Old Stone's records indicate that on the same day Jeannette and Doris traveled to East Providence and opened up a joint account in one of the bank's branches. The amount deposited in the East Providence branch was identical to the closing balance in the Coventry account. After Pauline's death, the East Providence account was closed out and the funds deposited in a joint savings account in the First Bristol County National Bank in Seekonk. Both Jeannette and Doris candidly admit that at no time did either of them contribute to the Seekonk account.

The single issue is whether Alvin's complaint should have been dismissed because of his failure to join Doris, who

Jeannette claims was and is an indispensable party. Jeannette's contention first brings us to Super. R. Civ. P. 19, which in its pertinent part reads as follows:

> "Necessary joinder of parties. —
> "(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest which is not also a several interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join a plaintiff refuses to do so, he may be made a defendant."

In *Anderson* v. *Anderson,* 109 R.I. 204, 283 A.2d 265 (1971), we discussed at some length the underlying conceptual basis for our Rule 19 and its federal counterpart from its origin in equity, through several developmental stages, to its present understanding and application. For our present purposes we believe it sufficient to observe that Rule 19 recognizes the difference between persons whose joinder in an action is absolutely essential if the action is to proceed at all and those who ought to be joined but in whose absence the action can, nevertheless, continue. The first class of such persons is referred to as "indispensable" and the latter group as "necessary."

In making the distinction between parties who are "indispensable" as opposed to those who are merely "necessary," we stated in *Anderson* that we would not follow the strictly formulative approach which had developed in the federal courts prior to the 1966 amendment of Fed. R. Civ. P. 19. Such an approach made any decision under Rule 19 concerning the parties' status dependent upon an abstract classification of the parties as either jointly or severally interested in the outcome of the dispute. Instead, we chose to subscribe to a position which has been labelled "the pragmatic approach." What this means is that there is no fixed formula for determining in every case whether a person is indispensable or merely necessary. Indispensability, we said in *Anderson,* could be determined only in the context of particular litigation after a thorough examination of the practical

factors in the case. Thus, "a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Provident Tradesmens Bank & Trust Co.* v. *Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936, 950 (1968).

To assist a trial justice who is called upon to render a decision under Rule 19, our *Anderson* decision provided a definition of "indispensable party," which incorporates the factors to be considered in making the determination. This working definition was first enunciated in *Stevens* v. *Loomis*, 334 F.2d 775 (1st Cir. 1964), and, although somewhat lengthy, bears repeating at this juncture:

> "true indispensable parties are only those whose interests could not be excluded from the terms or consequences of the judgment and leave anything, or appreciably anything, for the judgment effectively to operate upon, as where the interests of the absent party are inextricably tied in to the cause [citations omitted] or where the relief really is sought against the absent party alone [citation omitted]. In other words, if there may be a viable judgment having separable affirmative consequences with respect to parties before the court, and the inquiry is concerned soley with the inequities, in the light of the total circumstances, resulting from the inability to affect absent interested parties, then such other parties should be defined as merely necessary, not indispensable." *Id.* at 777.

The single most significant factor is whether a judgment entered in the case may have "separable affirmative consequences with respect to parties before the court." A decision on this mandates an analysis of the competing interests involved in the litigation.

In the case at bar, there are three parties who to one degree or another claim an interest in the funds that found their way in and out of a number of joint savings accounts — Alvin on behalf of his wife's estate and in his own right,

Jeannette, and Doris. Alvin's claim is quite simple: Pauline's alleged gift to Jeannette was testamentary in nature, and since the transfer was not made in conformity with statutory requirements regarding testamentary dispositions of property, it was a nullity. Jeannette, on the other hand, maintains that Pauline's gift to her was to be presently operative, and, therefore, the transfer was valid. Doris' claim stems from Jeannette's gift of a joint interest in the funds.

The dispute between Alvin and Jeannette involves but one issue — whether Pauline's transfer to Jeannette was testamentary. The outcome of this issue, unquestionably, is unaffected by the participation of Doris as a party to the suit. The jury verdict in favor of Alvin as administrator completely determined who, as between Alvin and Jeannette, was entitled to the funds that Pauline withdrew from her joint account with Alvin.

The only factor that arguably points to the joinder of Doris is that satisfaction of Alvin's judgment is to be made out of funds from the savings account in which she had a joint interest. We do not believe, however, that the existence of Doris' interest in the fund inextricably tied her into this litigation so as to prevent the court below from according relief between Alvin and Jeannette.

In his lawsuit Alvin sought a personal money judgment against Jeannette rather than an adjudication of right as to who was entitled to the funds that were on deposit in the Massachusetts bank. At no time did he ever seek to satisfy a judgment by proceeding directly against that account through either a pretrial attachment or a post-trial execution. Now the plaintiff has a money judgment which is enforceable by way of execution issued against Jeannette. Indeed, subsequent to the jury's verdict a stipulation was entered in which it was agreed that Jeannette would deposit in the Registry of the Superior Court the money that was then on deposit in the Seekonk account and that whoever prevailed on the appeal could withdraw the funds from the registry. Her contract of

deposit with First Bristol authorized her to do this, as she was entitled to withdraw some or all of the account as desired. If Doris objects to Jeannette's unilateral withdrawal of the money, she is not precluded from suing her aunt in an appropriate civil action. However, whatever rights she may have against Jeannette in no way affect the validity and enforceability of Alvin's judgment. The trial justice, therefore, did not err in refusing to dismiss the action, for Doris was not an indispensable party to Alvin's suit.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Nolan & Daily, Leo J. Dailey,* for plaintiff.

*Oster, Espo, Fay & Groff, George M. Prescott,* for defendant.