401 A.2d 19.

Thomas W. Pearlman *vs.* Catherine K. Rowell.

APRIL 13, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. The subject matter of this appeal is an attorney's right to a fee. The defendant, Catherine K. Rowell (Rowell), is before us on her appeal from a $2,500 judgment entered against her after a jury-waived trial in the Superior Court. The issue she raises is one which should be of considerable interest to both the bar and the public.

This litigation had its roots in the oft-cited case of *Rowell* v. *Kaplan*, 103 R.I. 60, 235 A.2d 91 (1967), where Rowell, in a suit which was commenced on December 10, 1965, unsuccessfully attempted to bar the foreclosure of a mortgage on a 7-acre tract of land she owned in Warwick, Rhode Island. Rowell's attorney at that time was Thomas W. Pearlman (Pearlman). Sometime in 1966 Pearlman forwarded a bill for services rendered to his client. The bill, which is dated March 6, 1966, is in the amount of $4,000. A photostatic copy of the bill, which is an exhibit,[1] includes several notations, one of which reads as follows:

---

[1]See Appendix.

"For good and valuable consideration, I have hereunto assigned this account to Lamba Tepic Investment Corporation.

[Signed] T. W. Pearlman
Thomas W. Pearlman
March 6, 1966"

On March 23, 1966, Lamba Tepic Investment Corporation (Lamba Tepic) instituted this suit against Rowell as "assignee of Thomas W. Pearlman," alleging nonpayment of the $4,000 fee. In her answer Rowell asserted two defenses: (1) that the complaint failed to state a claim upon which relief could be granted, and (2) that she had fully paid for the legal services rendered. This controversy finally came on for trial 10 years later in May 1976. Prior to that time Lamba Tepic's efforts to obtain relief by way of such vehicles as summary judgment and default judgment proved fruitless as, during the intervening decade, Rowell experienced several changes of counsel.

At trial there was testimony that indicates that Lamba Tepic is a real estate holding corporation owned and operated by Pearlman's father. Both Pearlman and Rowell gave contradictory versions concerning the terms of the fee arrangement. Pearlman testified that he had agreed to represent Rowell on condition that he receive a retainer of $500, which was to be used to cover a variety of anticipated expenses and then bill her for the fair value of services rendered once the mortgage foreclosure litigation had concluded. Rowell conceded that she agreed to pay the $500 for expenses but insisted that Pearlman accepted the case with the understanding that his fee would be one-third of whatever amount was ultimately recovered. The trial jusice, after noting that he believed Pearlman's description of the fee negotiations, then determined that a fee of $2,500 was fair and reasonable.

The issue which is of prime concern to us developed once Lamba Tepic had rested. At that point Rowell sought to dismiss the complaint pursuant to Super. R. Civ. P. 41(b)(2).

Her motion to dismiss rested on two grounds: (1) there was no credible evidence that the corporation had an outstanding account with her, and (2) the purported assignment of Pearlman's fee to Lamba Tepic was invalid under the terms of G.L. 1956 (1969 Reenactment) §11-27-3. In essence, this statute specifies: "Any person, partnership, corporation or association that receives any fee or any part of a fee for the services performed by an attorney at law shall be deemed * * *" to be engaged in the illegal practice of law. When Lamba Tepic pointed out that the illegality of a contract was an affirmative defense which, under Super. R. Civ. P. 8(c), should have been specially pleaded, the trial justice denied the motion.

Subsequently, however, the trial justice permitted Rowell to change her pleadings to include the defense of illegality because he felt that the only viable issue before him was whether or not an attorney could assign his claim for a fee to a non-lawyer, corporate or otherwise. Following the Rowell amendment, counsel for Lamba Tepic countered by filing a motion in which it relied upon the terms of Super R. Civ. P. 21 and asked the trial justice to permit it to amend the complaint by substituting Pearlman in its stead as party plaintiff. The motion was granted, and the trial justice then asked for arguments on Pearlman's right to recover.

Once the complaint had been amended, Rowell, realizing that her defense of illegality had collapsed, changed her approach and argued that Pearlman really had no legal interest in the recovery, since the evidence clearly indicated that his claim had been assigned to his father's corporation. When Rowell took this position, the trial justice permitted additional testimony from Pearlman and his father.

Each testified that the assignment to Lamba Tepic was purely a paper transaction so that Pearlman would suffer no undue publicity by having his name appear on the court docket in cases in which he was suing a client for a fee. According to the father and son, Pearlman received no consideration whatsoever for the assignment, nor did the cor-

poration expect to derive any benefits from the action pending against Rowell. Pearlman and his father referred to an affidavit attached to the amended complaint which indicates that on May 21, 1976, Pearlman had "cancelled" the assignment, and the corporation, through the father, "assented" to the cancellation. On the basis of this testimony, the trial justice decided in favor of Pearlman.

Near the close of his bench decision, the trial justice stated that the only issue before him was the amount of recovery "since I am satisfied that he [Pearlman] is now entitled to some sort of a recovery for the legal services performed." He expressed concern about "Mr. Pearlman's technique of assigning this claim to a corporation on the day that he renders the bill" but dismissed the issue of the illegality of the assignment because Pearlman had now become the plaintiff. The trial justice concluded his remarks by suggesting that Rowell's counsel leave the matter to this court's Disciplinary Board.

Rowell claims that the trial justice erred when he allowed Pearlman to replace Lamba Tepic as the sole party plaintiff. She directs our attention to Rule 21, which in relevant part states: "Parties may be dropped or added by order of the court [after a hearing or] at any stage of the action and on such terms as are just." This rule is inapplicable, she says, because here one party is being substituted for another rather than a party being added or dropped. She then alludes to Super. R. Civ. P. 25, which permits "substitution" of a party in the event of death, incompetence, transfer of interest, or when a public official "dies, resigns, or otherwise ceases to hold office * * *." Rowell argues that Rule 25 is of no help because Lamba Tepic is neither dead nor incompetent. She also claims that because of the so-called cancellation, there had never been a transfer of interest in the fee.

Rowell's reference to these rules reminds us of the divergence of opinion regarding the applicability of Rule 21 to a situation in which, as here, there is but one plaintiff who is to be replaced by another plaintiff. One groups follows the

sentiments expressed in *Hackner* v. *Guaranty Trust Co.*, 117 F.2d 95 (2d Cir. 1941), where the court recognized the propriety of employing Rule 21 to substitute parties in order to avoid the delay and expense which would necessarily be involved in the institution of a new suit. Other courts follow the rationale expressed in *Watson* v. *Employers Liability Assur. Corp.*, 202 F.2d 407 (5th Cir. 1953), that since Rule 21 envisions the retention, rather than the substitution, of parties, substitution must be accomplished by way of Rule 25.

Those who subscribe to the sentiments expressed by the Fifth Circuit Court believe that Rule 25 is the sole applicable tool because of the rule's express provision for the substitution of parties. The Fifth Circuit's view has been the object of critical comment. 1 Kent, *R.I. Civ. Prac.* §21.3 at 186; 3A Moore, *Federal Practice* ¶2104[1] at 2126-27 (2d ed. 1978); 7 Wright & Miller, *Federal Practice and Procedure* §1686 at 336 (1972).

Closer to home, the First Circuit in *Walker* v. *Providence Journal Co.*, 493 F.2d 82, 86 n.9 (1974), while affirming a trial judge's dismissal of a request for a preliminary injunction in an antitrust action on other grounds, faulted the dismissal, which was based upon the lack of a proper party plaintiff, by pointing out that under Rule 21 the trial judge on his own motion should have ordered the joinder of the plaintiff's transferee.

We adopt the views expressed by the First and Second Circuits. Once Lamba Tepic's motion to amend was granted, Rowell's defense of illegality had collapsed. The defense was based upon the terms of §11-27-3, which equate the receipt of any part of an attorney's fee with the illegal practice of law. However, Rowell's reliance on the statute gains her nothing, for there is no evidence that Lamba Tepic received any of the fee owed by her to Pearlman. Section 11-27-3 does not come into play until such time as the assignee actually receives a portion of the attorney's fee. This being so, we cannot fault the action of the trial justice.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*James J. McGair*, for plaintiff.

*Alden C. Harrington, John M. Mola*, Rhode Island Legal Services, Inc., for defendant.

## APPENDIX A

Thomas W. Pearlman
Attorney at Law
705 Industrial Bank Building
111 Westminster Street
Providence, Rhode Island 02903

Catherine K. Rowell
430 Meshanicut Valley Parkway
Cranston, R.I. 02910 March 6, 1966

---

LEGAL SERVICES RENDERED: In litigation, trial and conferences concerning property in Warwick, Rhode Island, Lots 205 and 208 AP 267, namely one third or 33 1/3 % of offer of settlement received to date of $12,000.00 clear to you with Kaplan paying off all mortgages, taxes, insurance and forclosure expenses to date of approximately $29,000.

This includes charges for trial work consisting of approximately nine appearances in court, numerous conferences with Court, attornies and clients, over 100 hours of preparation and research, prosecution of appeal, participation in negotiations for $75,000.00 offer on said property from James Fine of Kelly & Picerne with Mr. Andrew S. Heyman;

Preparation of numerous legal papers, etc.

For All The Above $4,000.00

---

For good and valuable consideration, I have hereunto assigned this account to Lamba Tepic Investment Corporation.

[Signed]
Thomas W. Pearlman
March 6, 1966

The assignment to the nominee corporation is hereby cancelled.

[Signed]
Thomas W. Pearlman
May 21, 1976

ASSENTED TO:
LAMBA TEPIC INVESTMENT CORPORATION

By _____