In re Steven E. **FERREY.**

No. 2001–172–M.P.

Supreme Court of Rhode Island.

June 26, 2001.

Lauren E. Jones, Roger Ross, Patricia French/Steven Ferrey, For Plaintiff.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

■ In this matter, Steven E. Ferrey, Esquire, a member in good standing of the Massachusetts bar, has moved for *pro hac vice* permission to provide legal services to a client in a continuing administrative proceeding before a state agency. He has done so pursuant to Article II, Rule 9 of our Supreme Court Rules. Based upon the contents of the affidavit filed as part of his motion, we grant that part of his motion seeking permission to practice before the Energy Facility Siting Board, effective as of the date of this opinion. We deny, however, that part of his motion seeking our permission, *nunc pro tunc*, to the date of his first appearance before that state

agency, and we deem it advisable at this time to give our reasons for so doing.

We begin by noting that this Court never before, in any published opinion or order, has granted a *pro hac vice* request nunc pro tunc when to do so "would be tantamount to affixing an *ex post facto* imprimatur of approval on what might under some circumstances be construed as the unauthorized practice of law[,]" a criminal offense prohibited by G.L.1956 § 11–27–5. *In re Church*, 111 R.I. 425, 427, 303 A.2d 758, 759 (1973). *See also In re Olsen*, 112 R.I. 673, 674, 314 A.2d 140, 141 (1974).[1]

Since 1917, § 11–27–5 has provided that: "No person, except a member of the bar of this state, whose authority as a member to practice law is in full force and effect, shall practice law in this state."

The practice of law is defined in § 11–27–2 as:

"the doing of any act for another person usually done by attorneys at law in the course of their profession, and, without limiting this generality, includes:

(1) The appearance or acting as the attorney, solicitor, or representative of another person before any court, *referee, master, auditor, division, department, commission, board, judicial person, or body* authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the court or other body[.]" (Emphasis added.)

Recognizing that circumstances might arise when a particular client might on

1. The dissent attempts to shunt the reality of the cold fact that this Court has never in any previous published opinion or order ever granted a *pro hac vice* request *nunc pro tunc* by divergently suggesting that such lack of precedent tells us little or nothing about the

Court's past practice in this respect. It is for that very reason that a majority of this Court now issues this opinion and reiterates what it spoke of in both *In re Church*, 111 R.I. 425, 303 A.2d 758 (1973) and *In re Olsen*, 112 R.I. 673, 314 A.2d 140 (1974).

"special and infrequent occasion and for good cause shown" require the assistance of an out-of-state attorney in a particular court proceeding in this state, this Court promulgated Rule 9 of Article II of our Supreme Court Rules concerning the admission of out-of-state counsel to practice law in this state.

It is important for the bar, as well as the various state agencies, boards and commissions, to note that Rule 9 pertains only to the granting of *pro hac vice* permission by this Court for an out-of-state attorney to represent a client in a cause or appeal "in any *court* of this state." There is nothing in Rule 9 that makes reference for admission *pro hac vice* of an out-of-state attorney to practice law here before any state or municipal board, agency or commission. That omission in Rule 9, however, does not deprive us of our unquestioned inherent right to permit an out-of-state attorney to do so upon a timely *pro hac vice* request by out-of-state counsel. In that regard, this Court recognizes full well that " '[p]ractice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court.' " *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 134, 179 A. 139, 144 (1935).

Consequently, because this Court has exclusive and ultimate authority to determine who may, and may not be permitted to practice law in this state, *see Unauthorized Practice of Law Committee v. State, Department of Workers' Compensation,* 543 A.2d 662, 664 (R.I.1988), we may, on proper motion, permit *pro hac vice* approval to an out-of-state attorney to practice law in this state before a municipal or state agency, board or commission. However, that permission can come only from this Court and, absent such prior permission, an out-of-state lawyer is subject to the prescriptions of § 11–27–5, as set out above.

We point out that § 11–27–6 also prohibits any out-of-state lawyer who practices law here without this Court's prior *pro hac vice* permission from receiving "any pay or compensation, directly or indirectly * * * for any services of a legal nature * * * pertaining to any action or proceeding in any court or before any referee, master, auditor, commission, division, department, board, or other judicial person or body, or for the preparation of any legal instrument[.]" Section 11–27–14 provides criminal penalties, both misdemeanor and felony, for violations of the prohibitions contained in chapter 27 of title 11, and, § 11–27–19 imposes upon the Attorney General the duty to prosecute or to restrain and enjoin any such violations. Whether Ferrey's past appearances before the Energy Facility Siting Board constitutes unauthorized practice of law in violation of chapter 27 of title 11 is not before us in this proceeding. Notwithstanding, the dissent suggests that § 11–27–13 might shield Ferrey from possible violation and prosecution. That suggestion, it must be noted, even if correct, overlooks the fact that § 11–27–13 does not extend to § 11–27–3, and thus, if Ferrey were to receive any fee for his services, he would then be in clear violation of chapter 27 of title 11 and subject to possible criminal prosecution, pursuant to § 11–27–19, or by private criminal complaint.

Thus, it is abundantly clear that since 1917, chapter 27 of title 11 has made unlawful the practice of law in this state by any lawyer who is not a member of the Rhode Island bar and who has not been given prior *pro hac vice* permission to practice here, regardless of whether that attorney appears before any court or before any municipal or state agency, board

or commission. This Supreme Court alone possesses sole authority to determine who may, and who may not, engage in the practice of law in this state. No municipal or state board, agency or commission shares in that authority, and none has ever been delegated by this Court to any municipal or state board, agency or commission.

In the particular matter before us concerning Attorney Ferrey, his motion request for *pro hac vice* admission was made in the alternative; namely, he requested admission at this time, and/or that such admission be made *nunc pro tunc* because he had in fact been practicing law here in this state before the Energy Facility Siting Board in apparent violation of § 11–27–5. However, he had done so with the agency's specific, but unauthorized, permission.

■ Attorney Ferrey, like everyone else in this state, is presumed to know what the laws of this state permit and prohibit. However, as a nonresident who had been given permission, albeit unauthorized, to practice in this state, it is somewhat understandable that Attorney Ferrey might not have known that chapter 27 of title 11 of our General Laws prohibited his practice

before the particular state agency when he initially appeared.[2] That assumed absence of knowledge, coupled with the Energy Facility Siting Board's previous permission for him to appear before it based upon its mistaken belief that it had been delegated authority to do so, prompted our decision to grant his *pro hac vice* request for permission to continue to represent his client in the continuing legal proceedings before that board. Our reason for declining his *nunc pro tunc* request is because, as noted earlier, "[t]o do so would be tantamount to affixing an *ex post facto* imprimatur of approval on what might under some circumstances be construed as the unauthorized practice of law" in violation of § 11–27–5. *In re Church*, 111 R.I. at 427, 303 A.2d at 759. *See also In re Olsen*, 112 R.I. at 674, 314 A.2d at 141. Thus, while Attorney Ferrey may be excused for not being aware of our state laws, this Court, on the other hand is presumed to know what § 11–27–5 prohibits, and we are duty bound to follow that law and not blindly ignore or condone past transgressions thereof.[3]

FLANDERS, Justice, concurring in part and dissenting in part.

I concur in the Court's decision to grant the motion for admission *pro hac vice*, but

**2.** Attorney Ferry is a member of the Massachusetts Bar. We note here that the Supreme Judicial Court of Massachusetts previously has stated that:
"[t]he judicial department of government, and no other, has power to license persons to practice law. Statutes may aid by providing machinery and criminal penalties, but may not extend the privilege of practising law to persons not admitted to practice by the judicial department." *Lowell Bar Association v. Loeb*, 315 Mass. 176, 52 N.E.2d 27, 30 (1943).

**3.** The concern expressed in the dissent about the lack of any rules governing a nonresident attorney's right to practice before an "in state commission" is answered by G.L.1956 §§ 11–27–2 and 11–27–5 of our general laws.

Because, as yet, there has been no formal adjudication by any court of a criminal violation of chapter 27 of title 11 on the part of Attorney Ferrey, a viable option to criminally prosecute pursuant to that statute still remains a consideration for the Unauthorized Practice of Law Committee; the Attorney General; or conceivably for a private complainant. For that reason alone, for this Court to have granted Attorney Ferrey's nunc pro tunc permission request would have been "tantamount to affixing an *ex post facto* imprimatur of approval" and the sanctioning of what appears to have been the illegal practice of law here by an out-of-state attorney who is not a member of the Rhode Island Bar. *In re Olsen*, 112 R.I. at 674, 314 A.2d at 141.

I would also do so *nunc pro tunc,* as requested. Given the limited scope of Article II, Rule 9 of the Supreme Court Rules (requiring court approval before a nonresident attorney may participate in the presentation of a cause or appeal in any court of this state) and the lack of any other rule with respect to the need for nonresident lawyers to obtain *pro hac vice* approval from this Court before they can provide legal services in connection with a client's participation in an administrative proceeding in this state, I would grant the motion nunc pro tunc. Doing so would also serve to obviate the inevitable tactical attempts—apparently already begun—to undercut and vitiate everything that this attorney participated in during the Energy Facility Siting Board proceedings before the Court approved the attorney's pro hac vice motion.

Here, the nonresident attorney sought and obtained approval from the Energy Facility Siting Board to appear before it on behalf of a client—apparently following that agency's practice and his own good faith belief that the agency possessed the delegated power to grant such approval. As the Court implicitly concedes in granting this attorney's *pro hac vice* motion, good cause has been shown why he should obtain *pro hac vice* admission. Thus, because we are not faced with an attorney who is guilty of any bad faith or other willful misconduct, I would grant the motion nunc pro tunc, retroactive to the date that Attorney Ferrey first began to do legal work on his client's behalf in connection with the administrative proceeding in question, and thereby stave off any attempts to invalidate or undo whatever oc-

curred there before this Court granted the requested approval.

I also believe that *pro hac vice* admission for nonresident lawyers should be addressed via a rulemaking procedure, rather than, as now, by miscellaneous petitions submitted to this Court. If the Court wishes to establish a *pro hac vice* approval procedure for nonresident lawyers who propose to provide transactional legal services to clients located in this state or who seek to represent or to provide legal services to an administrative agency in this state or who wish to provide legal services to a client in connection with that client's appearance before such an agency, then it should promulgate a rule to that effect, similar to Rule 9, upon advance notice and hearing to all interested parties and after allowing for an appropriate period of public comment about any such proposed rule.

Otherwise, by selectively granting and denying these *pro hac vice* requests on a case-by-case basis we are roiling the waters of the bar unnecessarily, only to reap a tidal wave of confusion and fear in response. With no rule to alert practitioners and parties to this requirement, no articulated standards for how we evaluate these motions, and no clear test for what triggers the need to obtain this Court's approval in the first place—or for why in one case we might grant such approval retroactively, in another case we might do so prospectively but not retroactively, and, in yet another, we might deny it altogether— we are creating a trap for the unwary and engendering expensive and unnecessary collateral litigation concerning the validity of any actions taken in this state by nonresident attorneys and their clients.[4] I

4. Most motions to this Court requesting admission pro hac vice are resolved by unpublished orders that typically grant the motion with little or no discussion of the reasons for doing so. Thus, the mere fact that the Court has not issued a *published* opinion or order granting a *pro hac vice* request *nunc pro tunc* provides cold comfort to the majority's position on this issue because it tells us little or nothing about the Court's past practice in this

would have hoped that the Court would seek to avoid such a course until and unless, with the help of the bar and other interested parties, we promulgate an appropriate rule to address multijurisdictional practice and the multifarious situations that might trigger the need for some type of pro hac vice approval process.

Moreover, the statutory provisions barring the unauthorized practice of law in this state by persons who are not admitted to the Rhode Island bar, G.L.1956 §§ 11–27–1, 11–27–2, and §§ 11–27–5 through 11–27–14, do not appear to apply to "visiting attorneys at law, authorized to practice law before the courts of record in another state, while temporarily in this state on legal business * * *." Section 11–27–13. This statute appears on its face to immunize nonresident attorneys from compliance with Rhode Island's unauthorized practice of law statutes—as long as such attorneys are admitted to practice in another state and are present in this state "while temporarily * * * on legal business." *Id.* Note that the "legal business" that the statute permits is not restricted to legal business that originates from non-Rhode Island clients. *Id.* Rather, as long as the nonresident attorney is visiting this state "while temporarily * * * on legal business"— even on legal business obtained from Rhode Island clients—he or she would not appear to be engaging in the unauthorized practice of law. *Id.* Thus, even though the regular, continuous, or permanent practice of law in this state by nonresident attorneys would be unlawful without obtaining admission to the Rhode Island bar, legal business that is performed "while temporarily in this state" by nonresident attorneys is arguably permissible. *Id.*

Here, Ferrey's legal representation of a client before the Energy Facility Siting Board appears to have occurred only "while [he was] temporarily in this state on legal business." *Id.* The record does not suggest that he regularly has practiced law here. Thus, I do not share the majority's belief that granting *nunc pro tunc* permission to Ferrey "would have been 'tantamount to affixing an *ex post facto* imprimatur of approval' and the sanctioning of what appears to have been the illegal practice of law here by an out-of-state attorney who is not a member of the Rhode Island bar." On the contrary, Ferrey appears to have been a visiting, nonresident attorney at law who was authorized to practice law before the courts of Massachusetts and who has conducted legal business here "while temporarily in this state" to represent a client before the Energy Facility Siting Board. As such, he would appear to be exempt from the unauthorized practice of law provisions cited by the majority.

Finally, § 11–27–3 ("Receipt of fees as practice of law") has no application to a visiting nonresident attorney who is "temporarily in this state on legal business" under § 11–27–13. Section 11–27–3 provides that "[a]ny person, partnership, corporation, or association that receives any fee or any part of a fee for the services performed by an attorney at law shall be deemed to be practicing law contrary to the provisions of this chapter." The "person" referenced in § 11–27–3, however, cannot possibly refer to the attorney rendering the legal services because that would lead to the absurd result that no attorney (whether a member of the Rhode Island bar or not) could receive a fee for

respect. And given this Court's rule prohibiting both the Court and counsel from citing to the Court's *unpublished* orders, see Article I, Rule 16(h) of the Supreme Court Rules of Appellate Procedure, no one can draw any

inferences whatsoever about the Court's past practice in this regard merely by pointing to the absence of any published opinions and orders on this subject.

the services he or she performed. Rather, § 11–27–3 is not triggered at all until such time as a third party assignee of a fee owed to an attorney actually receives a portion of the attorney's fee. *See Pearlman v. Rowell*, 121 R.I. 466, 401 A.2d 19, 20 (1979). Thus, I respectfully disagree with the majority's suggestion that § 11–27–3 bars Ferrey from receiving an attorney's fee for his legal work as a visiting lawyer.

Hence, I would have granted the *pro hac vice* request *nunc pro tunc*.