DECISION
Plaintiffs Persian Cultural Foundation of Rhode Island, Inc., Krysalis Foundation, f/k/a Persian Cultural Foundation of Rhode Island Inc., and Shanaz Bina (collectively "Plaintiffs") have brought this action for damages and specific performance for the conveyance of property located in the City of Providence, Rhode Island, designated as Assessor's Plat 67, Lots 162 and 211. In case No. PC/00-0613 (the "2000 case"), Persian Cultural Foundation ("PCF") brought action against Defendant Stephen Napolitano ("Napolitano"), Treasurer of the City of Providence for compensation for a building owned by PCF that was demolished by the City of Providence. In case *Page 2 
No. PC/02-3262 (the "2002 case"), Plaintiffs brought suit against the Providence Redevelopment Agency ("PRA"), John Gelati, in his capacity as Tax Assessor for the City of Providence (collectively the "City"), and John Lusi ("Lusi"), alleging that the City breached contracts in which it agreed to sell to the Plaintiffs Lots 162 and 211. Presently before this Court are the following pre-trial motions: Plaintiffs' Motion to Substitute; Plaintiffs' Request for a Jury Trial; Defendant City's Motion for Summary Judgment; Plaintiffs' Motion to Strike Defendant City's Affirmative Defenses, and Defendant Lusi's Motion to Dismiss.
 Facts and Travel
Case No. PC/00-0613
In 1995, Herbert A. and Wilhelmina P. Hicks (the "Hicks") owned property upon which was situated a vacant building at 124 West Park Street, Providence, Rhode Island, otherwise known as Assessor's Plat 67, Lot 162 ("Lot 162"). On December 4, 1995, the City sent a letter to the Hicks by certified mail informing them that their building on Lot 162 had been destroyed by fire and that unless they began renovation or demolition of the building within forty-five days, the City would commence legal action to compel compliance. (Def.'s Ex. 1, Plaintiff's Request for Admission to Napolitano ("RFA") ¶ 4.)[1] According to the Plaintiffs, this letter was not recorded in the City of Providence Land Evidence Records, nor was it placed in the property's chain of title. (RFA ¶ 5.) *Page 3 
Without having apparently taken any steps to rectify this problem, the Hicks sold Lot 162 to Michael A. Karten ("Karten") on March 18, 1996. (Def.'s Ex 3.)[2] On November 11, 1996, the City Department of Inspection and Standards issued a demolition permit, a copy of which was neither sent to Karten or the Hicks, nor was it recorded in the property's chain of title or Providence's Land Evidence Records. (Def.'s Ex. 4, RFA ¶ 16, 17.) Thereafter, although Karten was the record title holder at the time, on April 16, 1997, the City sent to the Hicks an order to demolish. (RFA ¶ 12, Tab C.) The City later posted a demolition notice on the property on May 27, 1997. (RFA ¶ 13.) Again, neither of these was placed in the chain of title or the Land Evidence Records. (RFA ¶ 9, 11, 15.)
On June 24, 1997, PCF took title to Lot 162 by quit claim deed. (Def.'s Ex. 6, RFA ¶ 19.) At the time, the Executive Director of the PCF was Plaintiff Shanaz Bina ("Bina"). Subsequently, on December 11, 1997, the City issued a demolition permit, and the following day, the structure upon Lot 162 was razed. (Def.'s Ex. 7, RFA ¶ 20, 23.) According to the Plaintiffs, a copy of the permit was not sent to the Hicks, Karten, or PCF. (RFA ¶ 22.) Thereafter, on November 12, 1998, the PRA exercised its power of eminent domain with respect to Lot 162, and an order of compensation for the property was entered on December 16, 1998. (Def.'s Ex. 10, 11.)
Claiming that it never received notice of the demolition or an offer for compensation, PCF filed a claim for compensation with the City, but the City Treasurer failed to respond within forty days. (Pl.'s Ex. 2, 3.) On May 21, 1999, PCF filed a *Page 4 
petition for assessment of damages, Case No: MP 98-6223, alleging that service of process was defective. In response, the PRA filed a motion to dismiss, which was heard by the court on February 3, 2000. The court partially resolved the matter by granting PRA's motion on the issue of whether PCF received notice, but did not reach a decision on whether the notice was sufficient. Thereafter, PCF filed this action, No. PC/00-613 seeking just compensation.
Case No. PC/02-3262
A. Lot 162
Plaintiffs' claims in case No. PC/02-3262 for breach of contract emanate from the aforementioned facts. As mentioned above, the court had partially resolved PRA's motion to dismiss case No. MP 98-6223, but had left unresolved whether notice had been sufficient. (Def.'s Ex. 33, Affidavit of F. Monroe Allen, Plaintiff's Ex. 4 at ¶ 2.) According to the Plaintiffs, rather than litigate this unresolved matter, PCF and PRA instead entered into settlement negotiations in June 2000.[3] As part of these negotiations, on June 29, 2000, F. Monroe Allen ("Allen"), attorney for PCF, wrote to John Palmieri ("Palmieri"), Executive Director of the PRA, stating the following:
 "I spoke with Richard Pacia today, and he indicated that Providence Redevelopment Agency might be willing to deed the property back to Persian Cultural Foundation on the assumption that the foundation has an intention to improve the property.
 I have spoken with the President of the organization. The President stated that as soon as they complete the clearing of the title to the property it is their intention to build a building on the lot in question, along with the adjacent lots which they also own, to *Page 5 
hold meetings of the organization and to also maintain the records in an office.
 This being the case, I request, on behalf of my client, that the property is deeded back to them and all pending actions between Persian Cultural Foundation and Providence Redevelopment Agency are settled. If this is agreeable, please let me know and Richard Pacia and I can work out the details." (Def.'s Ex. 14, Allen Aff. Ex. C.)
Over the following months, the parties exchanged various letters in apparent continuation of settlement negotiation.[4] For instance, in an October 23, 2000 letter to Allen, Palmieri wrote:
 "Please be advised that Mr. Pacia is correct in stating that the Agency would consider deeding the property back to your client. There are certain conditions that we will require that are not addressed in your letter.
 The Agency would need to know what type of building your client would build, a timetable of when they will start construction, and when they will complete the construction. When we receive this information we will then take your request into consideration." (Def.'s Ex. 20, Allen Aff. Ex. D.)
Two months later, Bina responded by giving the PRA what she described as "an original copy of the drawing for the Persian Cultural Foundation site and building" and noted that construction would commence in March, 2002. (Def.'s Ex. 21.) Allen then wrote to William G. Floriani at the PRA on February 21, 2001 requesting the following:
 "The Persian Cultural Foundation is under the understanding that the Providence Redevelopment Agency would deed back the lot in question to them providing construction is imminent. Before continuing any further on clearing the title, the Foundation would like to have a commitment or a letter of intent from the Providence Redevelopment Agency indicating that they are willing to deed back the lot in question when the Foundation is ready to break ground for its project. The Foundation is therefore requesting a *Page 6 
letter from the Providence Redevelopment Agency indicating their intent to deed the property back to the Foundation providing the Foundation has completed it plans, including clearing the title to the adjacent lots. The Foundation would like that letter to include a time span of up to five years." (Def.'s Ex. 22, Allen Aff. Ex. E.)
In response to this request, on March 29, 2001, Palmieri sent to Allen the following proposal:
 "We are in receipt of your letter dated February 21, 2001. This letter requests the return of the above referenced parcel, condemned by the Providence Redevelopment Agency. Please be advised that the Agency has certain guidelines that they must adhere to. The Agency would be willing to convey the parcel back to the Persian Cultural Foundation, provided certain conditions were met.
 We are aware of the legal problems you face in cleaning up the titles. The Agency can not, in good faith, grant a five (5) year period and hold this parcel for that length of time. The Agency would be able to grant an eighteen (18) month extension in transferring the parcel, with the possibility of reviewing the status of your legal problems at that time." (Def.'s Ex. 23, Allen Aff. Ex. F.)
Allen answered this letter in a letter to Palmieri, dated May 21, 2001, replying:
 "I received your letter of March 29, 2001, a copy of which I enclose, and I acknowledge your offer to grant an eighteen (18) month extension in the transferring of the parcel located at 124 West Park Street in Providence.
 I am proceeding with a title clearance of those lots and within eighteen months we should have a plan for the development of the lots." (Def.'s Ex. 24, Allen Aff. Ex. G.)
After Allen sent this letter, it appears that almost eight months went by without any further correspondence between the parties. It was not until January 23, 2002 that Palmieri wrote to Allen, seemingly reneging his offer to provide an eighteen month extension in his previous letter. (Def.'s Ex. 25, Allen Aff. Ex. H.) Palmieri wrote: *Page 7 
 "The Providence Redevelopment Agency has not received any correspondence from you or the Persian Cultural Foundation since May of last year. In your letter dated May, 21 2001, you acknowledged the my [sic] offer to consider your application to be named developer of the above referenced parcel. You also acknowledged the our [sic] offer of an 18 month period to prepare a suitable development plan. However, neither you nor the Persian Cultural Foundation has applied or been named developer. Nearly one year has passed without any further information submitted or any application made.
 Therefore, in keeping with the PRA's policy to foster development on this lot, the PRA is entertaining offers from other developers for the purchase and development of this lot." Id.
The PRA did indeed entertain offers from other developers, including Defendant Lusi. At a hearing on May, 9, 2002, at which both Lusi and PCF appeared, the PRA voted to award the development rights for Lot 162 to Lusi. (Def.'s Ex. 28 at p. 14.) The PCF then wrote to the PRA on May 31, 2002, stating that it was hereby accepting the PRA's March 29, 2001 offer and had complied with all terms therein. (Def.'s Ex. 30.)
Plaintiffs, thereafter, on June 12, 2002, filed this complaint, No. PC/02-3262, alleging that a contract existed between PCF and the PRA under which PCF had eighteen months to submit suitable building plans to the PRA and that the PRA would then consider transferring Lot 162 back to the Plaintiffs.[5] PCF contends that this contract was breached when the PRA awarded Lusi development rights prior to the expiration of the eighteen months.[6] Plaintiffs also insist that they had submitted suitable plans, and that Palmieri's successor as Executive Director, Samuel J. Shamoon, has testified that the plans were acceptable. (Pl.'s Ex. 6.) On December 8, 2005, the PRA and the City Tax *Page 8 
Assessor filed for a motion to dismiss and/or for summary judgment. This motion was heard and denied by the court on April 11, 2006.
B. Lot 211
In addition to the breach of contract action involving Lot 162, Plaintiffs also claim that the City breached a contract for the sale of property located at 120R West Park Street, Providence, Rhode Island, otherwise known as Assessor's Plat 67, Lot 211 ("Lot 211"). The pertinent facts involving this claim began in February, 2001, when the City placed a notice in the Providence Journal describing the terms for the acquisition of tax titles for parcels of property, including Lot 211. (Def.'s Ex. 41.) The notice read in part:
 "TERMS: (1) SALE TO THE FIRST QUALIFIED BUYER; (2) THE COLLECTOR RESERVES THE RIGHT TO WITHOLD SALES TO PARTIES WITH INTERESTS IN THE PROPERTY OR INSIDERS THERETO AND (3) CASH OR BANK CHECK ONLY. OFFERS ON THESE PROPERTIES WILL BE ACCEPTED AFTER MARCH 5, 2001 ON A FIRST COME BASIS, AND CAN BE MADE BY APPOINTMENT AT 421-7770 X533."
According to the Defendant City, Bina claims that on March 5, 2001, at 8:15 a.m., she called the Providence Finance Department and asked about purchasing Lot 211.[7] According to Bina, during that telephone conversation Mathew Clarkin ("Clarkin"), a Providence Finance Department employee, told her that she was the first person to call inquiring about Lot 211 and would be awarded the property. Bina also asserts that Clarkin informed her that she could not make a deposit that day, and consequently, she had to make an appointment for "two days or a day later." Defendants, though, claim that if this matter goes to trial, Clarkin will testify that he never made such comments. *Page 9 
Subsequent to this phone call, on March 9, 2001, Lusi placed a $100 deposit with the City for the purchase of Lot 211. (Def.'s Ex. 42.) Five days later, on March 14, 2001, Bina made an $80 deposit towards her purchase of Lot 211. (Def.'s Ex. 43, Affidavit of Shanaz Bina Ex. A.) Bina claims that she was also told by Clarkin that despite the date on Lusi's affidavit, Bina was actually the first to have made the deposit. Accordingly, on March 29, 2001, Bina's counsel wrote to the City Budget Office expressing Bina's concern over the procedures that were used in the tax title sale. (Def.'s Ex. 44.) In particular, Bina believed she complied with the terms of the notice by scheduling an appointment, and that Lusi's personal appearance was not in accordance with the requisite procedure. (Id., Def.'s Ex. 47.)
Despite Bina's objections to the process and her claim that she had satisfied all the requisite conditions, on May 3, 2001, Lot 211 was conveyed to Lusi. Lusi subsequently filed for a foreclosure on the right to redemption, and on August 29, 2002, the court issued a judgment on Lusi's petition vesting title to Lusi. (Def.'s Ex. 50.) Bina has now brought this action claiming that she and the City had entered into a binding agreement to sell to her Lot 211 and that the City breached this agreement when the property was sold to Lusi. Again, on December 8, 2005, the City filed for a motion to dismiss and/or for summary judgment, which was denied on April 11, 2006.
Since the court's decision to deny Defendants' Motion for Summary Judgment, the parties have submitted a number of other pre-trial motions: Plaintiffs' Motion to Substitute; Plaintiffs' Request for a Trial by Jury; Defendant City's Renewed Motion for Summary Judgment; Plaintiffs' Motion to Strike Defendant City's Affirmative Defenses and Defendant Lusi's Motion to Dismiss. Decision on these matters is rendered below. *Page 10 
 Motion to Substitute
The first motion before the Court is Plaintiffs' Motion to Substitute Parties pursuant to Rules 21 and 25 of the Rhode Island Superior Court Rules of Civil Procedure, requesting this Court to substitute the City of Providence Tax Collector, Robert P. Ceprano, for Defendant City of Providence Tax Assessor, John Gelati. According to the Plaintiffs, suit was inadvertently brought against the City's Tax Assessor instead of its Tax Collector. Plaintiffs contend that both the Tax Assessor and Tax Collector work out of the same office, and therefore, while not initially a named party, the Tax Collector was placed on notice of this suit. The Tax Assessor, furthermore, never indicated to Plaintiffs that it was the improper party. Plaintiffs do not believe that any party would be prejudiced by the substitution, and thus, argue that the Court should grant their motion.
While Plaintiffs' motion is framed as a request for a substitution under both Rule 21 and Rule 25 of the Rhode Island Superior Court Rules of Civil Procedure, Rule 21 is most applicable here. Although Rule 25 is titled "substitution of parties," and therefore, at first glance would seem to be the more pertinent rule regarding substitution, Rule 25, however, provides for a substitution of parties only in certain limited circumstances: death of a party, incompetency of a party, transfer of interest, or a public officer's death or separation from office. None of these applicable circumstances has occurred here, and therefore, Rule 25 inapplicable. This does not mean, though, that Plaintiffs are without any recourse for which to substitute the Tax Collector for the Tax Assessor, as our Supreme Court has held that parties may be substituted pursuant to Rule 21.
Superior Court Rules of Civil Procedure, Rule 21 provides:
 "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion *Page 11 
of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."
Although Rule 21 does not specifically use the phraseology "substitution," its declaration that parties may be added or dropped indicates that substitution may be accomplished through this rule. InPearlman v. Rowell, 121 R.I. 466, 401 A.2d 19 (1979), the court examined the relationship between Rule 21 and Rule 25 and recognized a split among the circuits as to the propriety of using Rule 21 to substitute parties. Certain courts held that Rule 21 "envisions the retention, rather than the substitution of parties," and accordingly,"substitution must be accomplished by way of Rule 25." Id. at 471, 401 A.2d at 21
(citing Watson v. Employers Liability Assur. Corp., 202 F.2d 407 (5th Cir. 1953)). In contrast, the Federal Court of Appeals for the Second Circuit "recognized the propriety of employing Rule 21 to substitute parties in order to avoid the delay and expense which would necessarily be involved in the institution of a new suit." Id. (citing Hackner v.Guaranty Trust Co., 117 F.2d 95 (2d Cir. 1941)). Comparing these two competing views, the Supreme Court of Rhode Island adopted the position of the Second Circuit: Rule 21 is an appropriate vehicle pursuant to which a party may be added, dropped, or substituted from an action before the court. Id.; see also, Catucci v. Pacheco, 866 A.2d 509, 515
(R.I. 2005) ("Rule 21 of the Superior Court Rules of Civil Procedure governs the addition, removal, and substitution of parties to an action by the Superior Court.") Therefore, even though the specific conditions for substitution under Rule 25 have not been satisfied here, this Court may still consider Plaintiffs' Motion to Substitute pursuant to Rule 21.See 7 Charles Alan Wright, Arthur R. Miller Mary Kay Kane,Federal Practice and Procedure § 1686 (3d ed. 2001) ("[T]here is no reason why a substitution of *Page 12 
parties cannot be made under Rule 21, in the discretion of the court and in the interest of justice, in situations not covered by Rule 25.")
In support of their motion, Plaintiffs again focus this Court's attention on the Supreme Court of Rhode Island's acceptance of the Second Circuit's opinion that substitution should be granted pursuant to Rule 21 "in order to avoid the delay and expense which would necessarily be involved in the institution of a new suit." Pearlman,121 R.I. at 471, 401 A.2d at 21. Plaintiffs argue that were this Court to deny their Motion to Substitute, Plaintiffs would be forced to initiate a separate lawsuit against the proper party, Tax Collector Ceprano. After years of pre-trial preparation, Plaintiffs contend that it would be a waste of expenses to have to bring a new suit at this time. Additionally, Plaintiffs argue that if the Tax Assessor remained as the named party, the possibility of judgment against the wrong party arises. In order to efficiently effectuate justice, Plaintiffs assert that the Tax Collector must be substituted as the proper party to this suit.
Defendant City opposes the Motion to Substitute arguing that it should be denied as untimely. The City contends that the Plaintiffs voluntarily waited until two weeks before trial to depose Tax Assessor Gelati — the point at which Plaintiffs claimed to have learned that they sued the wrong party. The City believes that as Plaintiffs had ample opportunity to discover the proper party, it would be prejudicial to substitute a party this far along in the proceedings. Moreover, the City insists that the Plaintiffs did, in fact, have knowledge of who the proper party was before they deposed the Tax Assessor. On April 9, 2001, Tax Collector Ceprano sent a letter to Plaintiffs' attorney stating that Plaintiff Bina's ten-percent deposit on Lot 211 was being returned. According to the *Page 13 
City, this letter notified Plaintiffs that the Tax Collector was the proper party, and therefore, substitution should have been requested at an earlier time.
This Court does not find that the Plaintiffs are necessarily precluded from now substituting parties because Plaintiffs could have deposed Tax Assessor Gelati earlier to ascertain the proper party to the suit. Plaintiffs were under no obligation to depose Gelati immediately after filing their complaint, and could have had strategic reasons for electing to depose Gelati when they did. This Court also finds that the April 9, 2001 letter is not conclusive evidence that Plaintiffs should have known that they had brought suit against the improper person. The letter simply indicated that the Tax Collector was returning the ten-percent deposit, but it did not signal the full extent of the involvement the Tax Collector had in this matter. Rule 21 provides that motions to add or remove parties can be brought "at any stage of the action." Thus, Plaintiffs' motion to remove the Tax Assessor and substitute the Tax Collector as the named Defendant cannot be held untimely simply because it was made close to the time of the scheduled trial date. See United States v. Hansel, 999 F. Supp. 694, 697-98
(N.D.N.Y. 1998) (Court allowed amendment when party did not become aware of information until after depositions were taken and defendants would not be prejudiced in any way).
At the July 25, 2006 hearing on this motion, Defendant Lusi also argued that pursuant to Catucci, the Plaintiffs' motion is untimely, as the Supreme Court in Catucci articulated that a last-minute request to substitute parties should be denied. Catucci, 866 A.2d at 515-16 ("Here the parties failed to argue Rule 21, and we need not decide its applicability in the context of this case. If we did so, however, we would deem the addition of parties who should have been named long before trial to be an abuse of *Page 14 
discretion.") This Court, however, finds Catucci readily distinguishable from the matter before the court. In Catucci, the defendants were not given notice of the addition of new parties until the close ofplaintiff's case. Id. at 515. (Emphasis added.) Moreover, the court found that "the addition of the new party defendants was based on the depth of their pockets and not on a determination that they were necessary, proper, or indispensable parties." Id. Here, though, the Plaintiffs have made their request to substitute prior to the trial. Additionally, Plaintiffs are not attempting to add the Tax Collector in order to increase their amount of recovery; instead the Plaintiffs discovered that the Tax Collector was the proper party against whom suit should have originally been brought. Accordingly, it does not follow from Catucci that this Court must deny Plaintiffs' motion, as the relevant facts of each case are distinguishable. This Court finds no evidence that any party would be unduly prejudiced by the requested substitution. This Court does find that substitution would be just, would avoid delay and expense, and would conserve judicial resources. Accordingly, Plaintiffs' motion is hereby granted.
 Plaintiffs' Request for a Trial by Jury
The Plaintiffs have also requested that this case be heard by a jury. In considering this request, this Court pays homage to the "constitutionally influenced `policy that favors the jury trial and requires the determination of legal issues by a jury, even though certain issues in the case may be equitable.'" DiPardo Sons, Inc. v.Lauzon, 708 A.2d 165, 170 (R.I. 1998) (quoting Bendick v. Cambio,558 A.2d 941, 944 (R.I. 1989)).
Defendants have raised a number of objections in opposition to a jury trial. Defendant City first argues that because a majority of Plaintiffs' claims are equitable in nature, their request for a jury trial should be denied. However, this argument is not *Page 15 
persuasive. The Supreme Court of Rhode Island has announced that "the general rule [is] that when a civil action comprises both legal and equitable claims, the legal claims, if adequately presented, must first be presented to a jury. DiPardo, 708 A.2d at 172 (R.I. 1998). InDiPardo, the Rhode Island Supreme Court addressed whether the trial court was required to submit to the jury a plaintiff's claim for tortious interference with contractual relations when the complaint also requested substantial equitable relief. The Court held that:
 "the Superior Court [is required] to submit to a jury any claims that could have been litigated in an action at law in 1843 [the time of adoption of the Rhode Island Constitution], even if the court is also asked to provide equitable relief in the first instance and then permanently after a trial. And this is so even if the entire action could have been brought before the pre-merger equity court." Id. (citing Maryland Casualty Co. v. Sasso, 98 R.I. 483, 490, 204 A.2d 821, 825
(1964)).
Stated differently, if a party brings an action based in law, as was recognized at the time of the adoption of the original Rhode Island Constitution, that matter may be heard by a jury despite the presence of other portions of the action having their basis in equity.
As the City seemingly admits through its selected language in its Motion to Strike Plaintiffs' claim for a jury, only "the bulk of
Plaintiffs' claims are equitable in nature." (Emphasis added.) This is not equivalent to an assertion that all of Plaintiffs' claims are derived from equity. In fact, while Plaintiffs' Third Amended Complaint does raise a number of counts based in equity, such as Counts III and IV for Unjust Enrichment and Counts V and VI for Promissory Estoppel, the Plaintiffs also assert two legal claims of breach of contract for which they have suffered damages.[8] *Page 16 
The City contends, however, that the mere fact that a contract is alleged does not necessarily make the nature of the claim a legal one guaranteeing the right to a jury trial. Although the City has cited to several cases in support of its contention, those cases are distinguishable from the matter presently before the court. For instance, the City interprets Tilicom Gammino, Inc. v. CommercialAssociates, 550 A.2d 1102 (R.I. 1990), to stand for the rule that the existence of a written contract does not change the nature of a proceeding. There, the action was initiated as a mechanics lien proceeding, which the Court has long held to be an equitable proceeding; accordingly, the Court found that the mere assertion of a contract did not convert the mechanics lien action into a matter at law.Id. at 1107. The complaint before this Court, however, alleges a direct breach of contract claim in Counts I and II of the Third Amended Complaint, which is starkly different from a mechanics lien claim, as it is one based in law as opposed to equity. See Rowell v. Kaplan,103 R.I. 60, 68, 235 A.2d 91, 96 (R.I. 1967) ("[A] claim for monetary damages . . . is traditionally legal, and if basic to the action, entitles plaintiff to a jury action.") The breach of contract claims here are legal in nature and basic to this action. See 8 James WM. Moore,Moore's Federal Practice § 38.10[2][c] (3d ed. 2006) (listing as an action at law "special assumpsit — to recover damages on a simple contract"). As DiPardo provides that legal claims combined with equitable claims may be heard by a jury, the fact that portions of Plaintiffs' claims sound in equity does not defeat Plaintiffs' request for a jury trial. *Page 17 
The City next argues that an initial question in this case is whether a contract was formed between the parties, which the City asserts is a purely legal question for this Court to decide. Similarly, the City contends that there are no relevant disputed facts, and thus, the case need not be heard by a jury. With these arguments, the court disagrees. The City would have this Court hold that the question of whether a contract is formed requires no intervention from a jury. However, such a position contradicts binding precedent. The Supreme Court of Rhode Island has acknowledged that "the resolution of a dispute concerning if and when contract negotiations materialize into a mutual understanding and resulting binding contract is ordinarily a question of fact for the factfinder." Marshall Contractors, Inc. v. Brown University,692 A.2d 665, 670 (R.I. 1997). Applying Rhode Island law, the United States Court of Appeals for the First Circuit has also held that "[t]he question of whether a contract has been formed is one of fact so long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences. Bina v. Providence College,39 F.3d 21, 27 (1st Cir. 1994); see also Crellin Technologies Inc. v.Equipmentlease Corp., 18 F.3d 1, 7 (1st Cir. 1994) ("[S]o long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences, the question of whether a contract has been formed between two parties is a question of fact to be determined by the factfinder.") In other words, the City's assertion that the court, as opposed to a jury, is the proper entity to determine whether a contract has been formed is true when there are no questions of fact, and the evidence can only lead to one conclusion. This Court does not find such a situation here. *Page 18 
As to the agreement to return Lot 162 to Plaintiffs, this Court finds that reasonable minds could differ as to whether the parties' correspondence constituted a contract or if the parties had the mutual intent to form a binding agreement. For instance, in his March 29, 2001 letter to attorney Allen, John Palmieri, Executor Director of the Providence Redevelopment Agency, wrote: "The Agency would be able to grant an eighteen (18) month extension in transferring the parcel, with the possibility of reviewing the status of your legal problems at that time."
This language is somewhat ambiguous as to whether an offer was made at that time or whether Palmieri was contemplating making an offer in the future. This ambiguity is further heightened by Palmieri's January 23, 2002 letter in which he referred to his previous letter as his "offer to consider your [Plaintiffs'] application to be named developer. . . ." Without resolving this issue of whether an offer was made, it is sufficient for this Court to find that the evidence does not "unerringly" point in one direction that a contract either has or has not been formed; therefore, the matter should be resolved by a jury. Furthermore, as Plaintiffs articulated at the July 25, 2006 hearing, there is a question of fact regarding the authority which Palmieri possessed to write this letter. Thus, for the above-stated reasons, this Court finds that a jury trial is appropriate for the claims involving Lot 162.
This Court also finds that there are questions of fact requiring a jury for Plaintiffs' claims involving the alleged agreement for the sale of Lot 211. At the July 25, 2006 hearing, counsel for Plaintiffs recited a litany of facts which remain in dispute, and consequently should be resolved by a jury. For instance, there is a question of fact as to what was said to Bina when she called the Tax Assessors' office and whether that office *Page 19 
expressed an intention to enter into a binding agreement to re-convey Lot 211.[9] Furthermore, the parties dispute whether a contract was formed. the City argues the parties never agreed in writing to transfer Lot 211; yet, Bina has submitted a "Receipt Tax Reverted Collector's Assignment," signed both by her and an official for the City, which could be taken to be the City's intention to be bound into a contract with Bina. (See Bina Affidavit, Ex. A.) Once again, it is for the fact finder to determine if the parties intended to enter into a contract.Marshall Contractors, 692 A.2d at 670. As there are questions of fact requiring resolution, this matter may appropriately be heard by a jury.[10]
Lastly, this Court finds unconvincing the City's argument that because this matter "involves numerous documents and arcane legal issues," it is better suited to be heard without a jury. This Court does not find that the number of documents alone is reason to deny a plaintiff's jury request. Moreover, this Court does not find the legal issues presented to be so complex as to exceed the understanding of a jury. Accordingly, the City's Motion to Strike Plaintiff's request for a jury on that ground is denied.
In addition to the City's objections, Defendant Lusi also opposes the Plaintiffs' request for a trial by jury, particularly arguing that the existence of a contract should be decided by this Court, regardless of whether it is characterized as an issue of one of law or fact.[11]
Lusi avers that the Marshall Contractors decision clearly supports this position. *Page 20 
However, Lusi's reliance upon that decision is misplaced. While it is true that in certain circumstances a court will make the determination of whether a contract exists, the Marshall Contractors Court further stated it would do so when the record evidence unerringly points only to one conclusion. Id. at 670. The Court even acknowledged that ordinarily the jury resolves whether negotiations have materialized into a binding contract. Id. Here, the evidence does not point unerringly in one direction, and therefore, this issue does not fall into the category of questions which should be resolved by the Court without the aid of a jury.
 Defendants' Renewed Motion for Summary Judgment and Plaintiffs' Motion to Strike Affirmative Defenses
Even though their first Motion for Summary Judgment was denied on April 11, 2006, Defendant City has submitted a Second Motion for Summary Judgment alleging that
 "a) This Court lacks jurisdiction over the claim involving Lot 162 because Plaintiffs failed to comply with the Administrative Procedures Act ("APA")
 b) Plaintiffs' wrongful condemnation claim as to lot 162 is time-barred pursuant to G.L. 1956 § 45-32-34 *Page 21 
 c) Plaintiffs' claims against the tax assessor are barred under G.L. 1956 § 44-9-31
 d) There is a lack of any genuine issue of material fact."
In response to this Renewed Motion for Summary Judgment, Plaintiffs have filed a motion asking this Court to strike the following affirmative defenses:
 "a) Second Affirmative Defense: Plaintiffs' claims as to Lot 162 are time-barred as no challenge to condemnation of Lot 162 was timely made under RIGL § 45-32-34.
 b) Third Affirmative Defense: Plaintiffs' claims as to Lot 162 must be dismissed under RIGL § 45-32-22.
 c) Fourth Affirmative Defense: Plaintiffs' claims as to Lot 162 are time-barred as no timely challenge to the PRA's award of development rights was made under the Administrative Procedures Act, RIGL § 42-35-1, et seq..
 d) Eighth Affirmative Defense: Plaintiffs' claims against the Tax Assessor as to Lot 211 are barred under RIGL § 44-9-31.
 e) Ninth Affirmative Defense: Plaintiffs' claims for money damages against the City are barred under RIGL § 45-15-5."
As grounds for this motion, Plaintiffs argue that these defenses were ruled upon in Plaintiffs' favor by the Motion Justice at the April 11, 2006 hearing on the City's initial Motion for Summary Judgment. Accordingly, Plaintiffs contend that the law of the case doctrine prohibits the City from further pursuing these defenses. This Court finds that if Plaintiffs' assertion is correct, then this Court need not re-examine the merits of several of the arguments raised in the Renewed Motion for Summary Judgment. Therefore, this Court believes that judicial efficiency would best be served were this Court to address Plaintiffs' Motion to Strike before considering Defendants' motion, as resolution of the former surely will affect the latter.
Motions to strike are authorized under Rhode Island Superior Court Rules of Civil Procedure, Rule 12(f), which provides in part that "the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or *Page 22 
scandalous matter." While the Court has the power to strike defenses from the pleadings, there is a long tradition of treating motions to strike with disfavor, and courts have been advised to grant such motions cautiously and sparingly. Ross-Simons of Warwick, Inc. v. Baccarat,182 F.R.D. 386, 398 (D.R.I. 1998) ("Motions to strike, however are disfavored by the courts. . . . A court should be reluctant to grant this severe remedy. . . ."); Narragansett Tribe of Indians v. SouthernRhode Island Land Development Corp., 418 F. Supp. 798, 801 (D.R.I. 1976) ("[C]ourts should treat motions to strike with disfavor and be slow to grant them."); Hill v. Bosler, 14 F.R.D. 170, 172 (D.R.I. 1953) ("A motion to strike a defense is not favored for determination of disputed an substantial questions of law.") This traditional disfavor of motions to strike is premised upon the rationale that these motions have a dilatory character and tend to create piecemeal litigation.Narragansett Tribe of Indians, 418 F. Supp. at 801 (citing Charles Alan Wright Arthur R. Miller, Federal Practice and Procedure § 1381 (1969)). However, even though motions to strike are often disfavored, this animosity "must be balanced against the motion's intended use as `the primary procedure for objecting to an insufficient defense.'"Driscoll v. United Health Plans of New England Inc., No. 94-195, 1995 R.I. Super. LEXIS 46, at *2 (R.I.Super. Feb. 6, 1995) (quotingNarragansett Tribe of Indians, 418 F. Supp. at 801).
Courts have dispelled this reluctance to grant motions to strike if a defense has been previously ruled upon and held insufficient. See Boston Maine Corp. v. Chicago, BQ Railroad, 258 F. Supp. 930, 934 (D.N.Y. 1966) ("Since summary judgment on the first claim in the complaint is granted . . . any defenses directed solely against the first claim must be struck as immaterial. . . ."); Higgins v. Shenango Pottery Co.,
 *Page 23 99 F. Supp. 522, 525 (W.D.Pa. 1951) (Defenses should be stricken when the same contention was rejected by the court in denying the defendants' motion to dismiss.); Ohmer Corp. v. Duncan Meter Corp., 8 F.R.D. 582, 583 (N.D. Ill. 1948) ("Since the second and third defenses . . . have already been ruled on by the court on preliminary motions based upon the same issues, it is not necessary that defendant reiterate said defenses in its answer.") For instance, in Driscoll the defendants' first affirmative defense maintained that the plaintiffs' complaint failed to state a claim upon which relief can be granted. Driscoll, 1995 R.I. Super. LEXIS 46 at *3. The court found that because that issue had already been heard and decided by the court when it denied with prejudice defendants' motion to dismiss, the defense was clearly insufficient and had to be stricken. Id. Similarly, here Plaintiffs assert that a number of the City's affirmative defenses have already been decided and should be stricken pursuant to the law of the case doctrine.
"The law of the case doctrine provides that, after a judge has decided an `interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical matter, should refrain from disturbing the first ruling.'" Balletta v.McHale, 823 A.2d 292, 295 (R.I. 2003). While the doctrine does not have the finality of the doctrine of res judicata, it is nevertheless a doctrine "that generally ought to be adhered to for the principal reason that it is designed to promote the stability of decisions of judges of the same court and to avoid unseemly contests and differences that otherwise might arise among them to the detriment of public confidence in the judicial function." Payne v. Superior Court, 78 R.I. 177, 184-85,80 A.2d 159, 163 (R.I. 1951). Our Supreme Court has held that "the `law of the case' doctrine is violated when a justice of the Superior Court grants a defendant's motion for summary judgment *Page 24 
at a pretrial conference where the same motion had previously been denied by another justice of the same court." Salvadore v. MajorElectric Supply Inc., 469 A.2d 353, 356 (R.I. 1983) (citingColumbus Ornamental Iron Works, Inc. v. Martin, 103 R.I. 620, 622,240 A.2d 405, 406 (1968)). The law of the case doctrine, though, is a flexible rule that may be disregarded when the record is expanded and should not be invoked to perpetuate a clearly erroneous earlier ruling.Chavers v. Fleet Bank, 844 A.2d 666, 677 (R.I. 2004).
Applying the law of the case doctrine to the within matter, Plaintiffs request that this Court strike Defendants' Ninth Affirmative Defense, which claims that G.L. 1956 § 45-15-5 bars the action before the Court. That section provides:
 "Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."
In their first Motion for Summary Judgment, Defendant City alleged that the Plaintiffs did not properly follow the above procedures, and thus, their claim should be barred. However, the City elected not to pursue this defense, a fact specifically recognized by the Motion Justice when she held: "There was argument and discussion at different hearings with regards to notice on [§] 45-15-5. It is my recollection that is not being pursued by the City. So, based on the following reasons I have just gone through, I am going to dismiss the City's motion or deny the City's motion for summary judgment." (Tr. 4/11/06 at 12.) Accordingly, the law of the case doctrine prevents this Court from *Page 25 
now ruling that § 45-15-5 bars this case when that issue has already been resolved in favor of the Plaintiffs. There has been no expanded record which would impact this decision and the Court's prior ruling is not clearly erroneous. Thus, as this defense has been found insufficient, this Court grants Plaintiffs' Motion to Strike Defendants' Ninth Affirmative Defense.
Similarly, the Motion Justice also held that Defendants' Third Affirmative Defense is inapplicable, or stated otherwise, "insufficient." With its Third Affirmative Defense, Defendant City sought dismissal of Plaintiffs' claim pursuant to § 45-32-22. That section requires an individual challenging the proceedings for a redevelopment plan to commence his or her action within thirty days after the adoption of the redevelopment plan. After the expiration of the thirty-day period, "the validity of the proceedings and the adoption of the redevelopment plan shall be conclusively presumed." Applying this statute to the matter here, Defendant City claimed that the Plaintiffs did not timely file their challenge.
However, in ruling upon the initial Motion for Summary Judgment, the Court concluded that "this section is not applicable to the current action. They [Plaintiffs] are not contesting, it seems to me, the proceedings or the adoption of the Lusi plan alleged with the Foundation." (Tr. 4/11/06 at 11.) The Court found that Plaintiffs were asserting that the City breached their contract with Plaintiffs and not necessarily its redevelopment plan proceedings. Finding no clear error of law with this decision, this Court once again finds that the law of the case doctrine prevents this Court from further expounding upon this issue. As defenses which were rejected by a court denying a defendant's Motion to Dismiss should be stricken, this Court grants Plaintiffs' Motion to Strike Defendants' *Page 26 
Third Affirmative Defense. See Ohmer Corp., 8 F.R.D. at 583 (Since defenses had already been ruled on by the court on preliminary motions based upon the same issues, plaintiff's motion to strike was sustained.)
The remaining affirmative defenses which Plaintiffs seek stricken have also been asserted by the City as grounds for its renewed summary judgment motion. For instance, Plaintiffs argue that this Court should strike Defendants' Fourth Affirmative Defense, pursuant to which the City alleges that the APA applies to this matter. In their Renewed Motion for Summary Judgment, the City continues to argue this defense, stressing that the Superior Court of Rhode Island has held the APA to apply to challenges of PRA actions, such as the claims brought here by the Plaintiffs. (Defendants' Pre-Trial Memorandum at 23) (citingSalhany v. Providence Redevelopment Agency, 86-3498, 1987 R.I. Super. LEXIS 1 (R.I.Super. Feb. 16, 1987)).[12] The City asserts that the Plaintiffs failed to comply with the thirty-day time period in which to file a complaint under the APA, as required by § 42-35-15(b), thereby depriving the Court of jurisdiction from hearing Plaintiffs claims against the PRA. Recognizing that this issue has previously been decided, the City maintains that "a challenge to subject-matter jurisdiction questions the very power of the court to hear the case . . . [and] such a claim . . . may be raised at any time in the proceedings." Id. (citing Pine v. Clark, 636 A.2d 1319, 1321 (R.I. 1994)). Thus, the City insists that this Court is now free to examine this defense.
The City's argument is unavailing. Although a party may challenge a court's subject matter jurisdiction at any time, it does not follow that a party has the right to *Page 27 
forevermore repeat a challenge to subject matter jurisdiction with the same arguments and evidence that were already rejected by the court. Such a process would undoubtedly stall the wheels of justice unnecessarily. For example, under the City's interpretation of the rule, a defendant could file a motion to challenge a court's subject matter jurisdiction hundreds of times, each time raising the same argument, and each time requiring the court to expend judicial time and resources responding to issues that have already been decided. See Ferguson v.Marshall Contractors, Inc., 745 A.2d 147, 151-52 (R.I. 2000) (Law of the case doctrine states that a second judge should refrain from disturbing a prior ruling on the same question that had been raised in an identical manner and is "particularly applicable when the rulings under consideration pertain to successive motions for summary judgment. . . .") This is illogical and cannot be the intended meaning of the rule. Instead, the Court finds that so long as defendants are afforded the opportunity to challenge the subject matter jurisdiction of the Court, the law of the case doctrine prevents them from raising an identical challenge thereafter.
Here, the City has availed itself of the opportunity to challenge the Court's jurisdiction, claiming the APA was not followed. The Court specifically rejected the argument that the APA applies to this matter when it denied the City's initial summary judgment motion. The Court held that Plaintiffs were not necessarily bringing an action challenging the PRA's decision to award developmental rights to Lusi. (Tr. 4/11/06 at 9-10.) Rather, it found that Plaintiffs had brought a claim for breach of contract, to which the APA does not apply. Id. at 10. Moreover, the Court held that the PRA failed to make any finding regarding the alleged contracts between Plaintiffs and Defendant City.Id. Accordingly, the Motion Justice declared that "[u]nder these circumstances, I do not *Page 28 
believe plaintiffs' proper course of action was properly appealed; but rather, a separate action for breach of contract would be required."[13] Id. The law of the case doctrine prevents a court from disturbing a previous ruling on an identical matter, and accordingly prevents this Court from rehearing the City's arguments as to lack of jurisdiction under the APA.[14] See Balletta, 823 A.2d at 295. As this matter will not be re-examined and has been rejected, it therefore follows that the defense is insufficient and may properly be stricken.Ohmer Corp., 8 F.R.D. at 583. Consequently, Plaintiffs' Motion to Strike Defendants' Fourth Affirmative Defense is granted, and Defendant City's Renewed Motion for Summary Judgment on this ground is denied.
Plaintiffs next ask that this Court strike Defendants' Second Affirmative Defense, which claims that Plaintiffs' action is barred by § 45-32-34.[15] The City again, though, *Page 29 
has re-raised this argument in its Renewed Motion for Summary Judgment, asserting that the Plaintiffs' challenge to the condemnation by the Redevelopment Agency was not made within three months of the notice of the planned taking as is required by § 45-32-34. However, this issue has already been resolved when the Court ruled on Defendant City's original Motion for Summary Judgment. The Court found that the Plaintiffs' claim in case No. PC/00-0613 concerns the demolition of the property on Lot 162 prior to the City taking the lot by eminent domain and that "[§] 45-32-34, therefore, is inapplicable to the 2000 action." (Tr. 4/11/06 at 6.) In regards to Case No. PC/023262, the court interpreted Plaintiffs' claims to be an allegation of breach of contract, and not necessarily a challenge to the condemnation proceeding. Id. at 7. Treating Plaintiffs' claims as such, the Motion Justice held:
 "The 2002 action is based on that breach [of the agreement to settle] which did not involve the invalid nature of the condemnation. That issue was pending in the 1998 action. The invalid nature of the condemnation is irrelevant. All that matters is whether a valid contract existed and whether the defendants breached that contract, and therefore, [§] 45-32-34 is inapplicable to the 2002 action as well." Id. at 8.
The Supreme Court of Rhode Island has found that the law of the case doctrine could be violated if the Superior Court were to grant a summary judgment motion where that motion had "previously been denied by another justice of the same court." Salvadore, 469 A.2d at 356. Our Supreme Court has recognized though that the law of the case doctrine should not be applied where the prior ruling was clearly erroneous. *Page 30 Chavers, 844 A.2d at 677. Here, this Court does not find any clear error of law with the Motion Justice's decision. To avoid violating of the law of the case doctrine, Defendants' Renewed Motion for Summary Judgment on this ground is denied, and Plaintiffs' Motion to Strike Defendant City's Second Affirmative Defense is granted.[16]
The Plaintiffs' final Motion to Strike asks this Court to strike Defendants' Eighth Affirmative Defense, whereby Defendants allege that G.L. 1956 § 44-9-31 bars Plaintiffs' action. This Court finds that unlike the previous affirmative defenses which Plaintiffs sought stricken, the court has yet to issue a definitive ruling on Defendants' § 44-9-31 defense. Addressing this defense at the April 11, 2006 hearing on the City's Motion for Summary judgment, this Court articulated that § 44-9-31's application to this matter was not clear at the time, stating the following:
 "I think there are two different areas that we have that may be a problem, that is the areas where the parties are looking for specific performance. If that, in fact, was true and I received supplemental memorandums on that issue, then such a remedy could have the effect of deeming the 2002 action as one involving the redevelopment plan, and, as such, in that particular case, I think § 44-9-31 may bar those claims for specific performance as a result of that. . . . I would suggest the parties draft an order with respect to the specific performance issues, because I see those as being troublesome based on the alleged action the plaintiffs are alleging. So, I think you need to address those specific claims. And I think they could very well be barred by the statute. And it's never been very clear, to be honest with you, what the parties were seeking with respect to specific performance." (Tr. 4/11/06 at 11-12.)
It is clear to this Court that the Motion Justice did not render a conclusion on the applicability of § 44-9-31 to this matter. Accordingly, this Court cannot hold that the law *Page 31 
of the case doctrine prevents review of this defense. Therefore, Plaintiffs' Motion to Strike Defendants' Eight Affirmative Defense pursuant to the law of the case doctrine must be denied. It follows that the City's renewed summary judgment motion on this ground shall be examined on its merits.
In its Renewed Motion for Summary Judgment, the City claims that any contractual rights to Lot 211 that Plaintiffs may have possessed are barred pursuant to § 44-9-31. That statute provides:
 "If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person shall do so by answer filed in the proceeding on or before the return date, or within that further time as may on motion be allowed by the court, or else be forever barred from contesting or raising the question in any other proceeding. He or she shall also file specifications setting forth the matters upon which he or she relies to defeat the title; and unless the specifications are filed, all questions of the validity or invalidity of the title, whether in the form of the deed or proceedings relating to the sale, shall be deemed to have been waived. Upon the filing of the specifications, the court shall hear the parties and shall enter a decree in conformity with the law on the fact." (Emphasis added.)
The City argues that Lusi was awarded tax title to Lot 211 on May 3, 2001. Thereafter, Lusi filed a foreclosure on the right of redemption action, for which he contends notice by publication was provided to "other parties unknown and unascertained." According to the City in its Renewed Motion for Summary Judgment, the Rhode Island Supreme Court's holding in Lusi v. Rustigian, No. P.M./02-1770. (Def.'s Ex. 50.) clearly extinguished any rights that Plaintiffs may have had to Lot 211 when the Court "forever foreclos[ed] and barr[ed] all rights of redemption." Defendant Lusi also claims that Bina never responded to the notice by publication to case No. PC/02-1770, and therefore, cannot now contest that Court's decision. *Page 32 
Plaintiffs dispute the Defendants' arguments on a number of grounds. First, Plaintiffs claim that the Defendants have not properly raised this defense and thus insist that it has been waived. Next, Plaintiffs assert that § 44-9-31 serves only to protect the purchaser of the tax title and would not protect the City from honoring its alleged contract with Bina. Additionally, Plaintiffs oppose Lusi's contention that they were given proper notice of Lusi's foreclosure action; consequently, § 44-9-31 cannot be relied upon.
Contrary to Plaintiffs assertions, this Court finds that in the City's First Amended Answer to Plaintiffs' Third Amended Complaint, the City did raise § 44-9-31 as its Eighth Affirmative Defense stating "Plaintiffs' claims against the Tax Assessor as to Lot 211 are barred under RIGL § 44-9-31." Accordingly, this defense was pled by the City and can be addressed by the Court. This Court agrees with the Plaintiffs that even if this Court were to find that § 44-9-31 and the court's holding in Lusi v. Rustigian, P.M. No. 02-1770, apply to this case, they do not protect the City from its contractual obligation to Bina. In their complaint, Plaintiffs seek monetary relief for damages, as well as specific performance. Even if § 44-9-31 were to protect Lusi's title to his property and prevent specific performance, Plaintiffs' claims for monetary relief would still remain.
The only remaining issue for this Court to decide concerning § 44-9-31
is whether that statute, as well as the court's holding in Lusi v.Rustigian, protects Lusi's title to Lot 211. Again, Plaintiffs contend that they were not provided notice of Lusi's petition to foreclose the rights of redemption. Plaintiffs assert that Lusi had knowledge that Plaintiff Bina had a competing claim for Lot 211 and consequently should have given Bina notice of his petition; without such notice, Plaintiffs claim that Defendant Lusi cannot now rely *Page 33 
on § 44-9-31. Defendant Lusi, on the other hand, argues that notice was indeed provided to Plaintiff Bina when notice by publication was made to "other parties unknown and ascertained." This Court finds, though, that there is a material question of fact whether Defendant Lusi had knowledge of Plaintiff Bina's claims to Lot 211 at the time he issued notice for his petition to foreclose the right to redemption. If Lusi did have notice of Bina's individual interest, then Lusi's notice could be insufficient as it did not contain the "names of all known respondents" as neither Bina nor PCF's name was in the notice.See § 44-9-27. As the questions of whether Defendant Lusi had knowledge of Bina's interest in Lot 211 and whether notice was sufficient remain unresolved, Defendants' Motion for Summary Judgment is denied.
Lastly, the City insists that summary judgment is appropriate because there is a lack of any genuine issue of material fact. Particularly, the City argues that based upon the agreed facts, no contract to sell either Lot 162 or 211 could have arisen from the parties' conduct. This Court finds, however, that there are a number of material facts requiring resolution, which make summary judgment inappropriate at this time. For example, in regards to the purported contract for the agreed sale of Lot 162, there is a question of fact as to whether the settlement negotiations escalated into and offer and acceptance. Palmieri's March 29, 2001 letter to PCF's attorney is ambiguous and could be interpreted as either an offer or simply an inquiry requesting PCF to make an offer. This ambiguity is further compounded by Palmieri's January 23, 2002 letter in which he states that he made an "offer" to provide PCF with eighteen months to prepare a suitable development plan. Moreover, if the letter were an offer, there is a factual question as to the terms of the offer, particularly whether the PRA had agreed not to transfer the *Page 34 
property to another person within the eighteen month time. Thus, as there is a question as to whether PRA intended to bind itself by this letter, the question of whether negotiations became a mutually binding contract is ordinarily one for the fact finder. MarshallContractors, 692 A.2d at 670. Accordingly, as these factual questions remain unsettled, summary judgment is inappropriate regarding the claims involving Lot 162.
Similarly, this Court finds that there are yet unresolved material questions of fact concerning Plaintiffs' claims to Lot 211. Primarily, there is a question as to whether Plaintiff Bina was told: a) that she had complied with the requisite procedures; b) was first in time; and c) would be awarded the property. Similarly, there is a question of fact as to whether Defendant Lusi complied with the City's procedures for obtaining the property. For instance, the notice published in TheProvidence Journal stated that offers can be made by appointment; however, it appears that Lusi did not make an appointment but simply walked into the City's office to make his offer. Whether Lusi took the proper steps to be awarded tax title is a question of fact that could significantly impact whether Plaintiff Bina was the first in time to satisfy the preconditions of the sale. As such, Plaintiff Bina disputes the Defendants' contentions that she was not the first in time to properly submit an offer. Additionally, there is also a question of fact in what capacity Plaintiff Bina conducted her activities involving the sale of Lot 211, as it is disputed whether she was acting in her individual capacity at all times or if she was acting on behalf of PCF.[17] These factual questions are material to this matter and as such, Defendants' Renewed Motion for Summary Judgment is denied. *Page 35 
 Defendant Lusi's Motion to Dismiss
The final motion before this Court is Defendant Lusi's Motion to Dismiss pursuant to Rule 12(b)(6) of the Rhode Island Superior Court Rules of Civil Procedure. Lusi alleges that in their most recent amended complaint, Plaintiffs fail to state any claim whatsoever against Defendant Lusi. In rebuttal, at the July 25, 2006 hearing before this Court, Plaintiffs argued that the Third Amended Complaint clearly spells out an action against Defendant Lusi. Plaintiffs also claim that Lusi is the title holder to Lots 162 and 211, and therefore, is an indispensable party. Moreover, according to the Plaintiffs, pursuant to Super. R. Civ. P. Rule 8(c), this defense has been waived. This Court holds that even if this defense has not been waived, Lusi's motion is still denied as he is an indispensable party to this action.
Our Supreme Court has adopted a "pragmatic approach" to determine whether a party is indispensable to an action. Retirement Bd. of theEmployees' Retirement System of the State of Rhode Island v.DiPrete, 845 A.2d 270, 285 (R.I. 2004) (citing Dorek v. Roderiques,120 R.I. 175, 179, 385 A.2d 1062, 1064 (1978)). While this approach does not provide the court with a fixed formula for determining whether a party is indispensable, this Court is guided by the following description of indispensable parties:
 "True indispensable parties are only those whose interests could not be excluded from the terms or consequences of the judgment and leave anything, or appreciably anything, for the judgment effectively to operate upon, as where the interests of the absent party are inextricably tied in to the cause . . . or where the relief really is sought against the absent party alone." Id.
Our Supreme Court has further stated that "[t]he most important factor in determining whether a party is indispensable is whether a judgment entered in the case may have *Page 36 
`separable affirmative consequences with respect to the parties before the court.'" Id. (quoting Doreck, 120 R.I. at 180, 385 A.2d at 1065
(quoting Stevens v. Loomis, 334 F.2d 775, 777 (1st Cir. 1964))).
Lusi is an indispensable party to the action. As part of their complaint, Plaintiffs seek the conveyance to them of Lots 162 and 211. Lusi is currently the record title holder of the aforementioned lots. Were this Court to grant Plaintiffs' request for specific performance, Lusi's interest in the property would surely be affected. Had this simply been a claim for monetary damages, this Court's decision may have been different as judgment could be satisfied from the City's funds, without disturbing Lusi's interest in his land. See Doreck,120 R.I. at 181, 385 A.2d at 1065. In Doreck, an absent party was not held to be indispensable when judgment against the named defendant could be satisfied from funds other than those held by absent party. In contrast to Doreck, if judgment for specific performance is held in favor of the Plaintiffs, that judgment could only be satisfied through the lands held currently by Lusi. Accordingly, Lusi has an interest in Lots 162 and 211 which are "inextricably tied into" this case.
Moreover, our Supreme Court has listed a set of questions, any of which that are answered in the negative could label a party as indispensable. Anderson v. Anderson, 109 R.I. 204, 210, 283 A.2d 265,269 (1971). One question is as follows: "Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party?" Id. This question must be answered in the negative in regards to Lusi. A ruling for the conveyance of the property to Plaintiffs would have an "injurious effect" upon Lusi. As the question of whether Plaintiffs are entitled to specific performance remains unresolved, the possibility of this judgment remains, and consequently, Lusi also *Page 37 
remains an indispensable party. Therefore, as he is an indispensable party to this action, Defendant Lusi's Motion to Dismiss is denied.
 Conclusion
This Court grants Plaintiffs' Motion to Substitute Tax Collector Robert P. Ceprano for Defendant Tax Assessor John Gelati. This Court further determines that this case shall be heard by a trial by jury as the Plaintiffs' claims are not based solely in equity but also in law, and material factual questions require resolution by the finders of fact. Plaintiffs' Motion to Strike Defendant City's Second, Third, Fourth, and Ninth Affirmative Defenses is granted as those issues have already been resolved in Plaintiffs' favor and because this Court finds no reason to re-examine those defenses. Plaintiffs' Motion to Strike Defendant City's Eighth Affirmative Defense, however, is denied, as this Court has not issued a prior definitive ruling in regards to the issues found in that defense. Moreover, this Court denies Defendants' Renewed Motion for Summary Judgment finding that there remain disputed material questions of fact. Finally, Defendant Lusi's Motion to Dismiss is denied as this Court determines Lusi is an indispensable party to this action. With respect to all of the above, counsel shall submit the appropriate order forthwith for entry by this Court.
[1] Plaintiffs have propounded Requests for Admissions to Defendant Napolitano, Defendant PRA and Defendant Lusi, all of which have apparently gone unanswered. The specific paragraphs referenced herein in this Court's findings of fact, though, are derived from Plaintiffs' RFAs to Napolitano.
[2] Plaintiffs' have submitted a chain of title card for the property showing that Karten took title to the property on May 19, 1996. (RFA ¶ 25, Ex. H.) While there is no apparent explanation for this inconsistency, this date is immaterial for the purpose of this Court's analysis, and the court will not expend judicial resources trying to determine upon which of these dates Karten took title to the property.
[3] Seeing that the two sides were attempting to resolve their dispute through negotiation, on July 3, 2000, Richard Pacia, Esq. wrote to Justice Hurst and asked her to refrain from making any further rulings in the MP 98-6223 matter while "settlement negotiations" continue. (Def.'s Ex. 17.)
[4] For instance, on July 20, 2000, Bina, as Executive Director of PCF, wrote to Palmieri requesting the return of Lot 162. (Def.'s Ex. 18.) Allen also made a similar request in his August 2, 2000 letter to Palmieri. (Def.'s Ex. 19.)
[5] The Plaintiffs' complaint was later amended with the most recent complaint filed on July 6, 2006 as Plaintiffs' Third Amended Complaint.
[6] Plaintiffs further assert that Lusi had knowledge of PCF's interest in Lot 162. As evidence for this contention, Plaintiffs propounded to Defendant Lusi a Request for Admissions, asking Lusi to attest to the accuracy of a letter dated October 22, 2003 from Lusi to the PRA. In that letter, Lusi wrote that "we are aware of the pending lawsuit against the City of Providence with regard to this lot." Lusi has not responded to the Request for Admission and this Court will thus deem the request as admitted.
[7] Defendant City alleges that Bina made these statements during her deposition. This Court, however, cannot locate a copy of the transcript from that deposition in the case file. It does not appear though that Plaintiffs object to these contentions as at the July 25, 2006 hearing, counsel for Plaintiffs made reference to Bina's conversations with the City regarding the sale of Lot 211.
[8] While Plaintiffs do allege that the breaches of contract resulted in the conveyance of realty for which monetary damages would be inadequate, they also allege that they have and continue to suffer damages from said breaches. Furthermore, Plaintiffs also request for "the issuance of a judgment against Defendants for Plaintiffs' actual and consequential damages." (Pls.' Third Amended Complaint, Wherefore Clause, ¶ 1.) As there is a question as to whether specific performance can be granted in this action, it appears to this Court that the Plaintiffs' claim is addressed in the alternative, i.e. if they are not entitled to specific performance, they still desire monetary relief for any damages for which they are to have been found to suffer as a result of the breach of contract. Accordingly, this Court finds that the breach of contract claim is one based in law.
[9] Bina claimed that on March 5, 2001, she was told by Mathew Clarkin, an employee of the City's Finance Department, that she was the first person to call and would be awarded the property. In its pre-trial memorandum, the City stated that at trial Clarkin will deny making such a statement. Accordingly, a material factual question remains for the jury to resolve.
[10] Furthermore, there is A dispute as to which party had the agreement to purchase Lot 211 as it is unclear whether Bina was attempting to purchase Lot 211 in her individual capacity or if she was acting on behalf of the PCF.
[11] Lusi also attempts to discredit two cases which Plaintiffs relied upon in the request for a jury trial: Laudati v. Tancredi, 166 A. 819
(R.I. 1933) and Bina v. Providence College, 39 F. 3d 21 (R.I. 1994). Lusi first states that Laudati has never been cited by any court in support of or in derogation of the right to a jury trial. However, there is no indication that this case has ever been overruled and is no longer good law. The court in Laudati held that "As the evidence was conflicting with reference to the existence of a contract to forbear, the case was one properly submitted to the jury." Laudati,166 A. at 820. This Court finds the Supreme Court of Rhode Island's decision inLaudati recognized the rule that the jury should determine if a contract exits when the evidence does not necessarily point to only one result. Here, the evidence does not clearly indicate that only one reasonable outcome is possible. Accordingly, Lusi's argument on this ground fails.
Moreover, Lusi's criticism and interpretation of Bina is also unpersuasive. In fact, Lusi's discussion of Bina primarily concerns the discretion public officials should be owed, as opposed to the right to a jury trial. The only reference Lusi made to a jury trial as it pertains to Bina is Lusi's recognition that the federal District Court did not have a jury trial on the breach of contract claim. Once again though, the Bina Court recognized that the court could determine whether a contract was formed because the evidence points unerringly in one direction, but had it been otherwise, the issue would have been one for the finder of fact to resolve. Bina, 39 F.2d at 27. Consequently, this Court finds Lusi's reliance on Laudati and Bina to be equally misplaced.
[12] Furthermore, the City argues that the PRA is an agency under § 42-35-1(a) and the proceeding pursuant to which it granted development rights to Lusi is a contested case as defined by § 42-35-1(c). Accordingly, the City believes a challenge to this proceeding must be brought under the guidelines of the APA.
[13] The Court further stated: "Even if the APA did apply, [§]42-35-12, I think saves the plaintiff's claim. I do not think a separate notice was ever provided to the plaintiffs, and, as such, would have had additional time to file an appeal, totaling 60 days from the date of the decision. By defendants' own admission, plaintiffs filed the current action 48 days after the decision." Id. at 10-11.
[14] Even if the City were allowed to raise this argument again, they would still fail. The principal case upon which the City relies,Salhany v. Providence Redevelopment Agency, No. 86-3498, 1987 R.I. Super. LEXIS 1 (R.I.Super. Feb. 16, 1987), is a Superior Court decision and does not support the City's position. While the case may serve as an example of a party having to appeal a PRA decision pursuant to the APA, it does not, however, stand for the position that a breach of contract claim must be appealed under the APA.
[15] Section 45-32-34 provides:
 Any owner of or persons entitled to any estate or interest in any part of the real property, and who cannot agree with the agency for the price of the real property, or estate or interest in it, so taken, may, within three (3) months after notice of the taking, or, if he or she has no notice, may within one year from the first publication of the copy of the resolution and declaration referred to in this chapter, apply by petition to the superior court in and for the county in which the real property lies, declaring the taking of his or her real property or estate or interest in it, and praying for an assessment of damages. Upon filing of the petition, the court shall cause twenty (20) days' notice of the pendency of the petition to be given to the agency by serving a resident attorney of the agency with a certified copy, and may proceed after that notice to the trial. Petitions brought under this section shall be tried by a jury, if claimed, in writing, by any party within the twenty (20) day period. The trial shall determine all questions of fact relating to the value of the real property and any estate or interest in it and the amount of it. Upon the entry of judgment in the proceeding, execution shall be issued against the money so deposited in court, and in default, against any other property of the agency. In case two (2) or more conflicting petitioners make claim to the same real property, or to any estate or interest in it, or to different estates or interests in the same real property, the court, upon motion, may consolidate their several petitions for trial at the same time and may frame all necessary issues for the trial. All proceedings taken pursuant to the provisions of this chapter shall take precedence over all civil matters pending before the court, or if the superior court in and for the county in which the real property lies is not in session in the county, then the petition may be heard in the superior court for the counties of Providence and Bristol.
[16] In granting the Plaintiffs' Motion to Strike Defendant City's Second, Third, Fourth and Ninth Affirmative Defenses, this Court recognizes that the moving party must demonstrate that he or she will suffer prejudice were the motion not granted. Ross-Simons,182 F.R.D. at 398. Here though, Plaintiffs would suffer prejudice by having to reargue against those defenses when those defenses have already been held to be insufficient and the issues were resolved in Plaintiffs' favor. SeeNarragansett Tribe of Indians, 418 F. Supp. at 802 ("If plaintiff is correct that these defenses are legally insufficient to defeat its claim, it would be extremely prejudicial to permit defendants to prove them at trial.")
[17] The City argues that if Bina were acting on behalf of PCF, then PCF could not claim that it had a contract with the City, as the City claims it would not have awarded PCF the contract because of its tax status. In the alternative, PCF alleges that if Bina were acting in her own capacity, she was not first in time, and thus, again has no claim to a contract. However, there is dispute as to whether Lusi complied with the requisite procedures, and if he did not, whether Bina was first in time. Thus, it is a material question of fact to determine in what capacity Bina was acting.